183 N.J. Super. 551 (1981)
444 A.2d 1119
BEL-AIR MOTEL CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
THE TITLE INSURANCE CORPORATION OF PENNSYLVANIA, A CORPORATION OF THE STATE OF PENNSYLVANIA, DEFENDANT.
Superior Court of New Jersey, Law Division, Burlington County.
Decided August 31, 1981.
*552 John T. Barbour for plaintiff (Barbour & Costa, attorneys).
Clifford J. Schoner for defendant (Reiners and Davis, attorneys).
HAINES, J.S.C.
Plaintiff Bel-Air Motel Corporation ("Bel-Air") purchased real property in Maple Shade, New Jersey, on February 11, 1970. The property had been specially benefitted by the township's earlier installation of a sanitary sewer system, a local improvement under N.J.S.A. 40:56. The improvement was authorized by an ordinance adopted on December 23, 1963 which called for an assessment of the cost of the improvement against the various properties specially benefitted, in proportion to the advantage received by each. The improvement was completed in 1967 after which a board of assessment commissioners made the required assessment. Its report, which did not include plaintiff's property, was confirmed by the township on October 9, 1967. A property owner other than plaintiff brought suit challenging the validity of the assessments. The suit was successful; on May 10, 1968 all of the assessments were declared to be invalid and a reassessment ordered. A revised report of assessments, which included plaintiff's property, was prepared and confirmed by the township on April 8, 1974, "subject to comment and adjustment by Gerould Clark."[1] Finally, on May 5, 1976 the township confirmed a further revised assessment report, also including plaintiff's property, directed that a duplicate *553 thereof be delivered to the tax assessor and ordered appropriate bills covering the assessments to be forwarded to the affected property owners. Plaintiff's bill, which it has paid, amounted to $1,266.88.
When Bel-Air purchased its property in 1970 it also purchased a title insurance policy from defendant Title Insurance Corporation of Pennsylvania ("TICP"). The terms of the policy required the insurer to pay Bel-Air for damages and expenses incurred in the event specified difficulties arose with respect to its title. The policy did not mention the improvement assessment as an exception to coverage or otherwise, and plaintiff claims to be protected against the loss suffered through its payment. Plaintiff also seeks recovery for negligence in searching its title. Attorney's fees and expenses are claimed. Defendant denies coverage. The issues have been submitted on the basis of a stipulation of these facts and briefs.
The negligence upon which plaintiff relies consists of a failure to order assessment searches from Maple Shade, as permitted by statute, searches which would have revealed the existence of the assessment ordinance. The negligence theory finds support in our cases. See Bronfman v. Greene, 53 N.J. 306 (1969). However, this case and others cited by plaintiff involve circumstances in which the insured purchased or relied upon a title search as well as a title policy. Bel-Air purchased and relied upon a title insurance policy and nothing more. Consequently, arguments concerning defendant's liability as a title searcher have no relevance. Plaintiff's right to recover depends upon the terms of its contract, the title insurance policy. Those terms require interpretation.
The policy insures Bel-Air "against loss or damage ... together with costs, attorneys' fees and expenses ... which the Insured shall sustain by reason of:
any defect in or lien or encumbrance on the title to the estate or interest covered hereby in the land described or referred to in Schedule A, existing at the date hereof, not shown or referred to in Schedule B or excluded from coverage in Schedule B or in the Conditions and Stipulations; or unmarketability of such title....
*554 The "Conditions and Stipulations" set forth in the policy include the following:
........
2. Exclusions from the Coverage of this Policy
........
This policy does not insure against loss or damage by reason of the following:
........
(b) Governmental rights of police power or eminent domain unless notice of the exercise of such rights appears in the public records at the date hereof.
........
(d) Defects, liens, encumbrances, adverse claims against the title as insured or other matters ... attaching or created subsequent to the date hereof.
These provisions, as in the case of all title insurance policy provisions, are to be interpreted liberally in favor of the insured. Sandler v. N.J. Realty Title Ins. Co., 36 N.J. 471 (1961).
The Maple Shade local improvement ordinance and the assessment of plaintiff's property were authorized by N.J.S.A. 40:56-14. The assessment became a lien after its confirmation by the governing body. N.J.S.A. 40:56-33 provides:
... every assessment for local improvements together with interest thereon and all costs and charges connected therewith, shall upon confirmation by the governing body, or by the court, be a first lien upon the real estate described in the assessment, paramount to all prior or subsequent alienations and descents of such real estate or encumbrances thereon, except subsequent taxes or assessments, notwithstanding any mistake in the name or names of any owner or owners, or any omission to name any owner or owners who are unknown....
N.J.S.A. 54:5-18.1 provides that "the governing body of such municipality shall provide by resolution for the making of official certificates of searches as to municipal improvements authorized by ordinance of the municipality but not assessed...." N.J.S.A. 54:5-18.5 and 18.6 provide that one who acquires land in reliance upon an assessment certificate which shows no assessment for improvements, or who acquires such an interest after applying for a certificate and failing to have one issued within 15 days, takes the acquired interest free from any subsequent municipal lien for improvements.
*555 Maple Shade did not acquire any lien for its local improvement against Bel-Air's property until 1976 when it confirmed the final assessment report. The TICP policy, however, insured against loss resulting not only from a "lien or encumbrance" but also from "any defect in ... the title" to plaintiff's property; it excluded only "defects ... adverse claims against the title as insured or other matters ... attaching or created subsequent to the date ... hereof." A "defect" in a title is something different from a "lien or encumbrance." The definition of "defect" contained in Black's Law Dictionary (4 ed.), 506, a definition relied upon in McMinn v. Damurjian, 105 N.J. Super. 132, 139 (Ch.Div. 1969), is
... (t)he want or absence of something necessary for completeness or perfection; a lack or absence of something essential to completeness; a deficiency in something essential to the proper use for the purpose for which a thing is to be used.
Did the existence of the Maple Shade local improvement ordinance and the completion of the improvements authorized thereby prior to the time Bel-Air purchased its property and insured its title constitute a "defect" in that title, or was no "defect" "created" until the township's governing body confirmed the assessment report and made the assessment a lien against the plaintiff's property?
I conclude a title defect affecting plaintiff's property existed in 1970 when it was purchased; it was created in 1967 when the improvement was completed and therefore prior to the purchase and the issuance of the defendant's policy. The ordinance was effective whether or not the commissioners' report had been filed. The fact that the local improvement had been completed made the eventual assessment of the property a certainty. The only question then remaining was the amount of the assessment. Bel-Air, therefore, bought its property subject to a liability: the obligation to pay the assessment when its amount was fixed, an obligation which would ripen into a lien when the assessment was confirmed. The Legislature recognized the fact that the local improvement ordinance itself created *556 a title defect when it adopted N.J.S.A. 54:5-18.1, mandating searches for municipal improvements not assessed in order to protect prospective purchasers of property. The ordinance contains a description of the areas in the municipality in which the improvement was to be constructed. If examined, it would have revealed the liability to which plaintiff's property was subject. The fact that this property was not included in the list of assessments which accompanied the initial report of the assessment commissioners is of no moment. The ordinance provided appropriate notice that it was subject to assessment. Furthermore, N.J.S.A. 40:56-33 makes the omission immaterial; it states that the assessment is a lien "notwithstanding any mistake in the name or names of any owner."
The language of the TICP policy, providing for exclusions from coverage, refers to "defects, liens, encumbrances, adverse claims against the title as insured or other matters ... attaching or created subsequent to the date hereof." (Emphasis supplied). Maple Shade's claim for the cost of improvements not yet assessed surely falls within this language; it was an "adverse claim" and an "other matter." True, this language referred to exclusions. Nevertheless, it provides interpretation of the company's meaning when the policy promises coverage for title "defects"; "adverse claims" are treated as the equivalent of "defects." The insurance policy also excludes "loss or damage" resulting from governmental rights of police power ... unless notice of the exercise of such rights appears in the public records at the date hereof." Here, the policy language does not refer to "defects, liens or encumbrances"; it insures against loss occasioned by the governmental exercise of police power when notice of its exercise may be found in a public record. The adoption of a local improvement ordinance is an exercise of the police power, conferred upon municipalities by the state legislature. Munn v. Illinois, 94 U.S. 113, 145-146, 24 L.Ed. 77 (1876). The exercise of that right did appear in the public records of the municipality at the time the title insurance policy was issued. Information concerning the ordinance was *557 available, on request, under N.J.S.A. 54:5-18.1. These policy exclusions must therefore be read as providing coverage with respect to the assessment liability to which the property was subject at the time of its purchase.
Bel-Air's insurance policy also provided coverage against loss resulting from "unmarketability" of its title. In Keown v. West Jersey Title and Guar. Co., 161 N.J. Super. 19 (App.Div. 1978) the court said:
A marketable title is one that is relatively free from doubt, such that in a suit for a specific performance a court would compel the prospective purchaser to accept the title ... if it is reasonably probable that the purchaser would be exposed to litigation not of a frivilous nature concerning the title, or would have to bring an action to quiet title, then specific performance would be denied to the prospective seller and the title would be considered unmarketable....
........
Marketable title has also been defined as a title free from reasonable doubt, that which a reasonable buyer would be willing to accept, or which is "salable." [at 23]
Bel-Air's property was subject to a definite liability. It would be assessed for part of the cost of the local improvement. The assessment, when confirmed, would become a lien against the property. These circumstances prevented the title to the property from being "relatively free from doubt." At a minimum, it is obvious that Bel-Air would have been exposed to litigation concerning its title if it challenged the assessment or decided to press a claim against the seller for its payment. Title, therefore, was not marketable and TICP became liable for any loss occasioned by that circumstance. The exclusions from coverage for an unmarketable title do not apply for the reasons set forth above.
Bel-Air also seeks attorney's fees and costs. These may be recovered under R. 4:42-9(a) which allows fees "in an action upon a liability or indemnity policy of insurance, in favor or a successful claimant". Defendant, however, has reserved the right to argue this question. A supplemental brief addressing the fee question may be filed within 20 days of the date of this opinion; an answering brief may be filed within 10 days thereafter. Plaintiff is entitled to costs in any event.
NOTES
[1] Gerould Clark is a stranger to this litigation.