2002 UT 109

James WAGNER and Jim Wagner, Inc., Plaintiffs and Appellants,

v.

Dennis CLIFTON, David Clifton, Clifton Associates, Inc., Lars Lynge, and Gorm International, Inc., Defendants and Appellees.

No. 20010171.

Supreme Court of Utah.

Nov. 15, 2002.

Donald J. Purser, Edward W. McBride, Jr., Salt Lake City, for plaintiffs.

David Jordan, Mark Hindley, Salt Lake City, and Richard Mitchell, Greenwood Village, Colorado, for the Cliftons and Clifton Associates.

Jon V. Harper, Salt Lake City, for Lynge and Gorm International.

WILKINS, Justice:

¶ 1 Plaintiffs James Wagner and Jim Wagner, Inc. appeal the trial court's dismissal of their complaint for lack of personal jurisdiction. We affirm.

## BACKGROUND

¶ 2 In determining whether the trial court properly granted a motion to dismiss, we "accept the factual allegations in the complaint as true and consider them, and all reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party." *Krouse v. Bower*, 2001 UT 28, ¶ 2, 20 P.3d 895. We recite the facts accordingly.

¶ 3 Plaintiffs, both of Texas, filed their original complaint against six defendants: Nu Skin International Corporation ("Nu Skin"), a Utah corporation; Dennis Clifton, a Colorado resident, David Clifton, a Texas resident, and Clifton Associates, Inc., a Texas corporation ("Clifton Defendants"); and Lars Lynge, a Colorado resident, and Gorm International, Inc., a Colorado corporation ("Gorm Defendants").

¶ 4 James Wagner is the principal partner of Jim Wagner, Inc., a distributor for Nu Skin. The defendants Dennis Clifton, Clifton Associates, Inc., ("Clifton Associates") and Gorm International, Inc. ("Gorm Int'l"), are Nu Skin distributors. The defendant David Clifton was a director, officer, and shareholder of Clifton Associates, Inc., and the defendant Lars Lynge was a principal in Gorm Int'l.

¶ 5 Soon after the original complaint was filed, Nu Skin and plaintiffs agreed to a voluntary dismissal of the claims against Nu Skin. The Clifton Defendants and Gorm Defendants filed separate motions to dismiss for lack of personal jurisdiction. After the first of two hearings on the matter, plaintiffs filed an amended complaint containing many of the same allegations and adding a request for declaratory judgment ordering the remaining five defendants to submit to mediation or arbitration in Utah in accordance with the Nu Skin Mediation/Arbitration provisions of the Nu Skin distributorship agreements between the various distributors and Nu Skin.

¶ 6 At the second hearing, the parties raised two issues: (1) whether the forum selection clause in the Nu Skin Distributorship Agreement applies to civil litigation between distributors, and (2) whether individual officers of a corporation are subject to the forum selection clause of a contract signed by the corporation.

¶ 7 The trial court granted the defendants' motions to dismiss for lack of personal jurisdiction "for the reasons set forth in Defendants' respective supporting memoranda and during oral argument." Plaintiffs appeal.

## STANDARD OF REVIEW

¶ 8 The only question before us is whether the trial court properly granted the defendants' motions to dismiss for lack of personal jurisdiction. "Because the propriety of a motion to dismiss is a question of law, we review for correctness, giving no deference to the decision of the trial court." *Krouse*, 2001 UT 28 at ¶ 2, 20 P.3d 895.

## ANALYSIS

¶ 9 This is a simple matter of contract interpretation. Plaintiffs are attempting to enforce provisions of a contract to which they are not a party, namely the distributorship agreements between the defendants and Nu Skin. The essential question is whether Nu Skin and the defendants Clifton Associates and Gorm Int'l, by signing the distributorship agreements, intended to create enforceable rights in third party beneficiaries of the agreements.

¶ 10 The only ground asserted by plaintiffs for personal jurisdiction over the Clifton and Gorm defendants is contractual consent. Plaintiffs argue that by signing the distributorship agreements with Nu Skin, the defendants Clifton Associates and Gorm Int'l consented to personal jurisdiction in Utah for disputes between themselves and any other Nu Skin distributor. There is no contract between plaintiffs and any of the Clifton or Gorm Defendants. Thus, plaintiffs may enforce the forum selection clause in the distributorship agreement between Nu Skin and the defendants Clifton Associates and Gorm

Int'l only if the parties to the agreements intended the plaintiffs to be third party beneficiaries.

¶ 11 The existence of third party beneficiary status "is determined by examining a written contract." *Am. Towers Owners Assoc., Inc. v. CCI Mech., Inc.,* 930 P.2d 1182, 1188 (Utah 1996). The written contract must show that the contracting parties "clearly intended to confer a separate and distinct benefit upon the third party." *Broadwater v. Old Republic Sur.,* 854 P.2d 527, 536 (Utah 1993). Therefore, we examine the distributorship agreements to determine whether the parties clearly intended to subject Nu Skin distributors to personal jurisdiction in Utah for civil litigation initiated by other Nu Skin distributors.

¶ 12 "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *WebBank v. Am. Gen. Annuity Serv. Corp.,* 2002 UT 88, ¶ 19, 54 P.3d 1139 (quoting *Cent. Fla. Invests., Inc. v. Parkwest Assoc.,* 2002 UT 3, ¶ 12, 40 P.3d 599) (internal quotations omitted). Whether the contract itself is ambiguous is also a question of law. *Id.* at ¶ 22. An ambiguity exists if the contract provision is susceptible to more than one reasonable interpretation. *Winegar v. Froerer Corp.,* 813 P.2d 104, 108 (Utah 1991). That is not the case here. Section 27 of the Nu Skin Policies and Procedures, which is incorporated into the distributorship agreement, contains the disputed forum selection clause and provides:

> The place of origin of this Contract ... is the State of Utah. This Contract is to be construed, with respect to its validity and performance obligations thereunder, in accordance with the laws of the State of Utah applicable to contracts made and to be wholly performed within such State. A Distributor agrees to submit to the jurisdiction of the courts of the State of Utah for resolution of any conflict or litigation arising under or purporting to interpret the Contract.

By using the words "[t]his Contract" when discussing the place of origin and applicable law, the parties are clearly referring to the particular contract before them. The "Contract" is defined in Section 1 of the Nu Skin Policies and Procedures as "[t]he Agreement between a Distributor and Nu Skin Enterprises ... the complete and only Agreement between Nu Skin Enterprises and a Distributor." The only reasonable interpretation is that this agreement between a distributor and Nu Skin is just that—between an individual distributor and Nu Skin, not two distributors.

¶ 13 One of the most basic principles of contract law is that, as a general rule, only parties to the contract may enforce the rights and obligations created by the contract. 17A Am.Jur.2d *Contracts* § 421 (1991). As noted above, only if the written contract's clear intent is to confer rights upon a third party may that third party enforce rights and obligations of the contract. In the absence of any clear indication that other parties were considered, the words "any conflict or litigation" refer only to any dispute between Nu Skin and the particular distributor who signed the contract in question.

¶ 14 Plaintiffs, however, also direct our attention to Section 30, paragraph B of the distributorship agreement as evidence that the contracting parties intended the Nu Skin Policies and Procedures to apply also to disputes solely between distributors and hence to third party beneficiaries of the agreement. Paragraph B states that the Nu Skin Mediation/Arbitration Policy "deals with the disposition of disputes arising out of the independent contractor relationship between Nu Skin International, Inc. and its independent contractors and/or disputes arising out of the relationship between Nu Skin International, Inc. independent contractors themselves." This paragraph may confer upon a third party, i.e., the nonsignatory distributor, the right to pursue mediation and/or arbitration against another distributor. The Mediation/Arbitration Policy itself requires that all mediation and/or arbitration take place in Utah. Plaintiffs argue that since all alternative dispute resolution must take place in Utah, the parties intended for all other forms of dispute resolution to take place in Utah.

¶ 15 However, this right to insist on mediation or arbitration is the only right found in the distributorship agreement that is clearly conferred upon a third party, and Section 30 is the only section in which non-parties to the distributorship agreement are clearly contemplated. The presence of language in the Mediation/Arbitration paragraph that is specifically directed to third parties draws into sharp relief the absence of such language in the forum selection clause and other sections of the distributorship agreement. The fact that the distributorship agreement takes care to include non-parties in the application of the Mediation/Arbitration Policy must reasonably be interpreted to mean that this is the only place where non-parties are granted rights.

¶ 16 We will "attempt to harmonize all of the contract's provisions and all of its terms" when determining whether the plain language of the contract is ambiguous. *Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 12, 40 P.3d 599. We conclude that the language of Sections 1, 27, and 29 is meant to address the relationships of parties and non-parties as a whole, and that the language of Section 30, paragraph B is meant to address only the application of the Mediation/Arbitration Policy. Since this is a civil lawsuit filed in district court, the Mediation/Arbitration Policy does not presently apply.

¶ 17 A necessary consequence of plaintiffs' interpretation of the phrase "any conflict or litigation" in the distributorship agreement is that applying the forum selection clause to disputes solely between distributors would also require applying the forum selection clause to disputes between non-distributors and distributors that purport to interpret the contract. We are unwilling to impose such a broad and burdensome interpretation of the contract in the absence of a clear intent by the parties to confer those rights on such a large body of unidentified third party beneficiaries, and in the face of an otherwise unambiguous contract.

¶ 18 Plaintiffs also offer the Hartvigsen affidavit as evidence of Nu Skin's intent when drafting the forum selection clause in the distributorship agreement. "A court may only consider extrinsic evidence if, after careful consideration, the contract language is ambiguous or uncertain." 813 P.2d at 108. Since we determine that the language of the contract is unambiguous, we need not consider the Hartvigsen affidavit as extrinsic evidence of the parties' intent.[1]

¶ 19 Lastly, we note that the defendants David Clifton and Lars Lynge did not sign Nu Skin distributorship agreements, but were merely officers of or principals in one of the businesses that did sign the agreement. Since the agreement does not extend personal jurisdiction in Utah to Clifton Associates and Gorm Int'l in this case, personal jurisdiction clearly cannot extend to non-signatory officers, directors, or partners of those entities. Therefore, we need not and do not reach the question of whether individual officers of a corporation are subject to the forum selection clause of a contract signed by the corporation.

## CONCLUSION

¶ 20 The forum selection clause of the distributorship agreement is unambiguous. Clifton Associates and Gorm Int'l did not consent to personal jurisdiction in Utah for disputes solely between Nu Skin distributors when they signed the agreement, nor, by extension, did David Clifton or Lars Lynge as officers or principals in the defendant corporations. The trial court's dismissal of the complaint for lack of personal jurisdiction is affirmed.

¶ 21 Chief Justice DURHAM, Justice HOWE, Justice RUSSON, and Judge IWASAKI concur in Justice WILKINS' opinion.

¶ 22 Having disqualified himself, Associate Chief Justice DURRANT does not participate herein; District Judge GLENN K. IWASAKI sat.

---

1. We presume that the trial court also refused to consider the Hartvigsen affidavit when making its determination, despite the absence of any findings of fact or conclusions of law in its ruling.