2004 UT App 379

**VESTIN MORTGAGE, INC., a Nevada corporation, Plaintiff and Appellant,**

v.

**FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, Defendant and Appellee.**

No. 20030941–CA.

Court of Appeals of Utah.

Oct. 28, 2004.

Cassie Wray, John A. Snow, and Stephen Christiansen, Van Cott Bagley Cornwall & McCarthy, Salt Lake City, for Appellant.

Alan L. Sullivan and Brett P. Johnson, Snell & Wilmer, Salt Lake City, for Appellee.

Before BENCH, Associate P.J., DAVIS, and THORNE, JJ.

## OPINION

DAVIS, Judge:

¶ 1 Vestin Mortgage, Inc. (Vestin) appeals from a trial court order dismissing Vestin's claim with prejudice for failure to state a claim upon which relief can be granted. We affirm.

## BACKGROUND

¶ 2 Capsource, Inc. (Capsource), doing business as Del Mar Mortgage, now known as Vestin, made two separate loans to The Ranches, L.C. (The Ranches). Both loans were secured by real property (the property) located in Eagle Mountain City (Eagle Mountain) pursuant to trust deeds for the benefit of Vestin and its predecessor. Capsource first loaned $1,965,000 to The Ranches on or about April 14, 2000. On April 26, 2000, First American Title Insurance Company (First American) issued Policy No. 2701–A–49 (Policy 2701), insuring Capsource's interest under the first trust deed in the amount of $1,965,000. On or about August 18, 2000, Vestin loaned The Ranches $1,800,000, and on August 28, 2000, First American issued Policy No. 3192–A–49 (Policy 3192) in the amount of $1,800,000 to insure Vestin's interest under the second trust deed. As part of Policy 2701 and Policy 3192 (collectively, the policies), First American also issued Endorsement F.A., ALTA Form 31. Vestin assigned some or all of its right, title, and interest in the trust deeds to various third parties.

¶ 3 On June 20, 2000, Eagle Mountain adopted a resolution declaring its intention to create a special improvement district (SID), for the purpose of constructing certain improvements and assessing real property situated within the boundaries of the SID. On August 1, 2000, Eagle Mountain adopted Resolution 14–00, which created the SID. The resolution, however, did not mention assessments, the levy of assessments, or the creation of an assessment lien. Several days later, on August 4, 2000, Eagle Mountain recorded with the Utah County Recorder's Office a "Notice of Intention" (the notice) to create the SID. In addition to providing notice that Eagle Mountain intended to create the SID and intended to levy assessments to pay for improvements, the notice estimated the total cost of the improvements and the portion of the cost which would be paid for by the SID. However, the notice did not levy an assessment—Eagle Mountain[1] did not levy the assessment until April 25, 2001 when it adopted Ordinance No. 06–2001. The assessment for the entire SID, approved by Ordinance No. 06–2001, totaled $16,799,282,

---

1. "[T]he governing body of a municipality may: ... levy assessments on the property within the district that is benefitted by the improve- ments...." Utah Code Ann. § 17A–3–304(3)(b) (1999).

approximately $3,500,000 less than the estimate contained in the notice. In addition to levying the assessment, the ordinance provided for the acceleration of the assessment upon the voluntary transfer of title to property within the SID.

¶ 4 After the creation of the SID, First American issued CLTA Form 104 Endorsements to the policies, to insure the interests of the assignees of Vestin's interest in the trust deeds. The endorsements were issued as of the date of the recording of the assignments, and became effective as of the date of issuance.

¶ 5 The Ranches eventually defaulted on the loans from Vestin and its predecessor and, on July 25, 2002, Vestin took title to the property through nonjudicial foreclosure of its trust deeds. According to Vestin, it was only when it entered into a contract to sell the property to a third party that Vestin learned from a title report that the property was within the boundaries of the SID. At that point, Vestin realized that Eagle Mountain had levied a $2,241,348.70 assessment on the property in April 2001, which upon the voluntary sale of the property would become immediately due and payable. Vestin alleges that when the prospective buyer learned of the assessment, it refused to proceed with the purchase. Vestin then filed a claim under the policies, contending that the policies insured against the assessment of the SID. First American, however, denied Vestin's claim.

¶ 6 The policies and endorsements include several clauses relevant to Vestin's claim for coverage. The policy jacket contains the following language:

> SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, FIRST AMERICAN ... insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:
>
> ....

> 2. Any defect in or lien or encumbrance on the title;
>
> 3. Unmarketability of the title;
>
> ....
>
> 6. The priority of any lien or encumbrance over the lien of the insured mortgage....

The Exclusions From Coverage section provides:

> The following matters are expressly excluded from the coverage of this policy and [First American] will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
>
> 1.....
>
> (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
>
> ....
>
> 3. Defects, liens, encumbrances, adverse claims or other matters:
>
> ....
>
> (d) attaching or created subsequent to Date of Policy....

The CLTA Form 104 Endorsement states:

> [First American] hereby insures:
>
> [The assignees of Vestin in the mortgage] ... against loss or damage which such insured shall sustain by reason of any of the following
>
> ....
>
> (B) The existence of any subsisting tax or assessment lien which is prior to the insured mortgage....
>
> (C) The existence of other matters affecting the validity or priority of the lien of the insured mortgage, other than those shown in the policy....

Finally, the F.A. Form 31 Endorsement provides:

> [First American] hereby insures against loss which the Insured shall sustain by reason of any of the following matters:

1. Any incorrectness in the assurance which [First American] hereby gives:

    (a) That there are no covenants, conditions, or restrictions under which the lien of the mortgage referred to in Schedule A can be cut off, subordinated, or otherwise impaired....

¶ 7 After First American denied Vestin's claim for coverage under the policies, Vestin sued First American alleging a breach of the insurance contract. First American moved to dismiss the complaint pursuant to Utah Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The trial court granted First American's motion and dismissed Vestin's complaint with prejudice. Vestin appeals the trial court's order of dismissal.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 Vestin argues that the trial court erred by granting First American's motion to dismiss. The propriety of a motion to dismiss is a question of law, which we review for correctness, giving no deference to the decision of the trial court. *See Wagner v. Clifton,* 2002 UT 109, ¶ 8, 62 P.3d 440. More specifically, Vestin asserts that the trial court erred by concluding as a matter of law that Vestin's claims are not covered under the policies and that the policies are unambiguous. "The trial court's interpretation of a contract presents a question of law, which we review for correctness." *Green River Canal Co. v. Thayn,* 2003 UT 50, ¶ 16, 84 P.3d 1134.

## ANALYSIS

█ ¶ 9 We determine the extent of an insurer's liability by reference to the provisions of the title insurance policy. *See Cummins v. U.S. Life Title Ins. Co. of N.Y.,* 40 N.Y.2d 639, 389 N.Y.S.2d 319, 357 N.E.2d 975, 975 (1976).

    When interpreting a contract, a court first looks to the contract's four corners to determine the parties' intentions, which are controlling. If the language within the four corners of the contract is unambiguous ... a court determines the parties' intentions from the plain meaning of the contractual language as a matter of law.

*Fairbourn Commercial, Inc. v. American Hous. Partners, Inc.,* 2004 UT 54, ¶ 10, 94 P.3d 292 (alteration in original) (quotations and citation omitted). "We will attempt to harmonize all of the contract's provisions and all of its terms when determining whether the plain language of the contract is ambiguous." *Wagner,* 2002 UT 109 at ¶ 16, 62 P.3d 440 (quotations and citation omitted). Vestin's argument that the policies are ambiguous is based upon its reading of the exclusions to the policies; however, before we can review the exclusions, we must first determine whether Vestin's claims are covered by the insuring clauses of the policies.[2] If Vestin's claims are not covered by the policies, then the exclusions are not relevant. We, therefore, begin our analysis by determining whether Vestin's claims are covered under the plain language of the coverage sections of the policies.[3]

█ ¶ 10 Vestin does not claim coverage under either the "lien" or "encumbrance" provisions of the policies; rather, Vestin argues that the "various insuring clauses contained in the policies, when read in conjunc-

---

**2.** Vestin argues "that in order for First American to avoid liability, First American was required to disclose and except the Eagle Mountain SID from coverage." Additionally, Vestin claims that if it "had been made aware of the Eagle Mountain SID and that the Assessment became immediately due and payable upon voluntary transfer of title[,] ... Vestin may not have made the [l]oans at all to avoid the issue of acceleration of the Assessment upon voluntary transfer."

    The first part of Vestin's argument is illogical: since the disclosure would be in the form of an exclusion, Vestin would have no claim even if the claim were otherwise covered. The second part of Vestin's claim suggests a claim sounding in equity grounded on detrimental reliance, rather than the breach of contract claim, which is the subject matter of this action. The real issue in this case is whether Vestin's claim is covered by the policy. The failure of First American to exclude something that would not otherwise be included in the coverage sections of the policies does not equate to coverage for Vestin. If Vestin's claim does not fall within the coverage of the policy, then it must fail.

**3.** Although we fail to see how anything that occurred after the issuance of Policy 2701 implicates that policy, because of our ruling herein, we need not address that issue separately.

tion with the 'governmental police power' provisions, afford coverage to Vestin for 'defects,'[4] 'incorrectness'[5] and 'other matters.' "[6] We first determine whether the SID and the recorded notice constitute a "defect" on the property title, "an incorrectness in assurance" or "other matter affecting title." We conclude that they do not.

¶ 11 Because we, like the parties, were unable to find Utah law that directly resolves the dispute, we look to treatises and other jurisdictions for guidance. "Title insurance, as opposed to other types of insurance, does not insure against future events." 43 Am.Jur.2d *Insurance* § 529 (2003). Moreover, "a prospective or contingent encroachment or lien does not render the insurer liable." *Id.* Title insurance policies "generally have been held to include coverage for assessments existing at the time that the insurance is issued, but not to cover assessments which are rendered after that time, even though the right to levy the assessment existed at the time of the insurance." Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 159:36 (1998). Most importantly for this case, "[u]npaid future installments of an improvement assessment which have not been decreed as constituting a lien against the property do not constitute an existing 'requirement, lien, encumbrance, or defect.' " *Id.* § 159:37.

¶ 12 In *Edwards v. St. Paul Title Insurance Co.*, 39 Colo.App. 235, 563 P.2d 979 (1977), the insured under a title insurance policy sued the insurance company for damages when a tax was levied on his property two years after the date of issuance of the policy. *See id.* at 980. The insurance policy provided coverage for "[a]ny defect in or lien or encumbrance on the title." *Id.* The insurance company, however, had not mentioned anywhere in the policy that the property was situated within a particular water and sanitation district, which had been formed two years prior to the issuance of the policy. *See id.* At the time the plaintiff bought the property and the policy was issued, "there were no district taxes or assessments due or payable or certified to the treasurer's office, and thus there was obviously no lien against the property for such taxes." *Id.* The Colorado Court of Appeals held that "the mere existence of the district and the prospect of taxes in the future was not a lien, encumbrance, or defect as of the date of issuance of the policy." *Id.*

¶ 13 Similarly, in *Strass v. District–Realty Title Insurance Corp.*, 31 Md.App. 690, 358 A.2d 251 (Ct.Spec.App.1976) the Court of Special Appeals of Maryland concluded that city assessments for the installation of water and sewer lines "were not encumbrances until they were inevitable and that as long as the City had the option to levy them or not, they were not inevitable until they were levied." *Id.* at 258. Therefore, "[t]he potential assessments were neither liens nor encumbrances when the policies of title insurance were issued."[7] *Id.*

¶ 14 Vestin asserts that the term "defect" must be given a broader interpretation than the terms "lien" or "encumbrance," otherwise it would have been unnecessary to use all three terms in the policy if they each had the same meaning. While we hold that neither the SID nor the notice in this case constitut-

---

4. The policy jackets insure Vestin against any loss or damage resulting from any defect in the title as of the date of the policies.

5. The F.A. Form 31 Endorsement insures Vestin against loss which it shall sustain by reason of any of the following matters: "[a]ny incorrectness in the assurance which [First American] hereby gives: (a) That there are no covenants, conditions, or restrictions under which the lien of the mortgage referred to in Schedule A can be cut off, subordinated, or otherwise impaired."

6. In the CLTA Form 104 Endorsement, First American insures the assignees of Vestin in the mortgage "against loss or damage which such insured shall sustain by reason of ... the existence of any subsisting tax or assessment lien which is prior to the insured mortgage," and "the existence of other matters affecting the validity or priority of the lien of the insured mortgage." By its terms, the endorsement insures the assignees and applies to liens prior to the insured mortgage.

7. The policy provision insuring against defects in *Strass v. District–Realty Title Insurance Corp.*, 31 Md.App. 690, 358 A.2d 251 (Ct.Spec.App.1976) was substantially similar to the policies in this case. *See id.* at 253. The policy insured against direct loss or damage by reason of "[a]ny defect or defects in the title of the Insured." *Id.*

ed defects in Vestin's title, we also recognize that "defect" may be defined as something less than a "lien" or "encumbrance." The fact that the SID and notice did not amount to a "defect," "lien," or "encumbrance," does not mean that all three terms are given the same meaning.

¶ 15 Vestin has not identified any defect in the title to the property that existed on the effective date of the policies. Both policies were issued to Vestin months before the SID assessments were levied in April 2001 by Eagle Mountain's adoption of Ordinance No. 06–2001.[8] The policies insuring Vestin's title to the property provided coverage only for defects that existed as of the effective date of the policies. Prior to the approval of Ordinance No. 06–2001, the assessments were contingencies not covered by the insuring provisions of the policies. Prior to the adoption of Ordinance No. 06–2001, Eagle Mountain may have decided not to levy any assessment at all. Unlike *Bel–Air Motel Corp. v. Title Insurance Corp. of Pennsylvania,* 183 N.J.Super. 551, 444 A.2d 1119, 1122 (Ct. Law Div.1981), relied upon by Vestin, where the assessments were "a certainty," the assessments in this case may or may not have been inevitable. As First American pointed out, "The Special Improvement District was simply a means by which the City might levy the intended assessment at some unspecified future date."

¶ 16 Since virtually all private property in the State of Utah lies within the boundaries of a governmental entity which may or may not take an action affecting the property, we are persuaded that the correct rule in this jurisdiction is one that recognizes that mere exposure to a potential assessment does not rise to the level of a defect, lien, or encumbrance. The prospective nature of the SID and the notice also preclude them from constituting "other matters" affecting title or from rendering First American's assurances incorrect. Neither the SID nor the notice were conditions, or restrictions under which the lien of the mortgage could be cut off, subordinated, or otherwise impaired because there was no impairment until there was a lien.

¶ 17 Vestin argues that the police power exception to the exclusions provision is central to both its claim for coverage and to demonstrate that the policies are ambiguous. We conclude that neither of Vestin's applications of the police power exclusion is correct.

¶ 18 Vestin claims that "[t]he [p]olicies provide coverage for the exercise of '[a]ny governmental police power . . . ' that is recorded in the public records." (Third and fourth alterations in original.) Therefore, according to Vestin, "First American's acknowledgment that the creation of the Eagle Mountain SID and the Notice of Intention constitute the exercise of police power confirms that Vestin's claim is covered under the police power provision of the [p]olicies." This assertion, however, is incorrect. Nowhere do the policies state that they cover the exercise of any recorded police power. Vestin improperly relies on an exception to the exclusions. The Exclusions From Coverage section states:

> The following matters are expressly excluded from the coverage of this policy and [First American] will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
>
> 1. . . . .
>
> > (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

The exclusions, and the exception for the exercise of recorded police power, are applicable only if Vestin's claims are covered by the insuring clauses of the policies. If Vestin's claims are not covered, then we need not reach the exclusions. Vestin fails to demonstrate how an exception to an exclusion is tantamount to coverage. The exclusions and their exceptions are important only as they may apply to something that would otherwise be included in the coverage section of the policies. Because the existence of the SID and the notice of Eagle Mountain's in-

---

8. First American issued Policy 2701 on April 26, 2000 and Policy 3192 on August 28, 2000.

tention to levy assessments do not affect Vestin's title and, therefore, are not covered by the policies, the exclusions to the policies and the recorded police power exception to those exclusions are not applicable.

¶ 19 Finally, according to Vestin, an ambiguity exists concerning the scope of coverage under the policies "[b]ecause the insuring clauses of the [p]olicies provide coverage to Vestin." Having determined that the police power exception to the exclusions has no application to Vestin's claim, we conclude that the policies are unambiguous.[9]

## CONCLUSION

¶ 20 The applicable provisions of the policies are not ambiguous under the facts of this case, and Vestin's claims are not covered under the policies. Accordingly, the trial court's dismissal of the complaint for failure to state a claim upon which relief can be granted is affirmed.

¶ 21 WE CONCUR: RUSSELL W. BENCH, Associate Presiding Judge and WILLIAM A. THORNE JR., Judge.

---

9.  Our conclusion that the police power exception to the exclusions is not applicable to Vestin's claim does not mean that the exception would not apply in other cases—cases in which a particular exercise of recorded police power is first determined to be covered under the policy. Because the exception could have application in other appropriate situations we are able "to harmonize all of the contract's provisions and all of its terms," *Wagner v. Clifton,* 2002 UT 109, ¶ 16, 62 P.3d 440 (quotations and citation omitted), and contrary to Vestin's claim, the exception is not rendered meaningless.

Furthermore, because we conclude that the policies are unambiguous we need not consider Vestin's claim that First American's motion to dismiss should have been treated as a motion for summary judgment. Having determined that the policies are unambiguous, we are not left with a factual question as to the intent of the parties. *See id.* at ¶ 18 ("A court may only consider extrinsic evidence if, after careful consideration, the contract language is ambiguous or uncertain." (quotations and citation omitted)).