2006 UT 34

**VESTIN MORTGAGE, INC.,**
Plaintiff and Petitioner,

v.

**FIRST AMERICAN TITLE INSURANCE COMPANY, Defendant and Respondent.**

No. 20041132.

Supreme Court of Utah.

June 2, 2006.

John A. Snow, Stephen K. Christiansen, Cassie J. Wray, Salt Lake City, for plaintiff.

Alan L. Sullivan, Brett P. Johnson, Salt Lake City, for defendant.

WILKINS, Associate Chief Justice:

¶ 1 Vestin Mortgage, Inc. (Vestin) sought to recover under two policies of title insurance issued by First American Title Insurance Company (First American). The claim arises from the adoption of a special improvement district (SID) by the municipality in which the real property lies. First American said the notice of intent to create the SID recorded by the municipality was not a defect in title covered by the policies and moved to dismiss Vestin's complaint. The district court agreed and granted the motion. Vestin appealed to the court of appeals, which affirmed. Vestin now challenges the decision of the court of appeals on certiorari. We affirm.

## BACKGROUND

¶ 2 Vestin, or its predecessor, made two loans to The Ranches, L.C., each secured by trust deeds on real property located in Eagle Mountain, Utah. In connection with the loans, First American issued two title insurance policies that insured Vestin's interest under the trust deeds.

¶ 3 Between the dates of the two loans, Eagle Mountain adopted a resolution declaring its intention to create a SID, adopted a resolution creating the SID, and recorded a "Notice of Intention" with the county recorder's office in Utah County, in accordance with Utah Code section 17A–3–307. The notice disclosed that the town council had adopted a resolution declaring the council's intention to create the SID, the project's total anticipated cost, and the council's intention to assess real property within the boundaries of the SID to pay for the improvements. The notice also included a copy of the ordinance that was adopted creating the SID. The property securing the Vestin loans lies within the SID.

¶ 4 Some months after the title policies were issued, Eagle Mountain adopted the "Assessment Ordinance" which levied the assessment on real property within the SID. This ordinance included a provision which indicated, for the first time, that if the prop-

erty were sold, the property's share of the assessment would be accelerated and due in full upon the sale instead of being payable in small annual amounts over an extended period of time.

¶ 5 About two years after the second policy was issued by First American, The Ranches defaulted on the two loans and Vestin took title to the property pursuant to its trust deeds through a nonjudicial foreclosure. Vestin then entered into a contract to sell the property, and in conjunction with this potential sale, Vestin received an updated title report regarding the property. Vestin alleges that it is at this time that it first learned of the assessment levied against the property by the SID and that the assessment became immediately due and payable upon the sale of the property. After Vestin disclosed this information to the buyer, the buyer refused to proceed with the sale of the property. Vestin filed a claim with First American in which Vestin contended that the policies insured against the assessment. First American denied the claim.

¶ 6 Vestin filed suit alleging breaches of the two insurance policies. First American moved to dismiss for failure to state a claim under which relief could be granted pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure. The district court granted the motion, dismissing the complaint with prejudice. Vestin appealed. The court of appeals affirmed the district court and concluded that "[t]he applicable provisions of the policies are not ambiguous under the facts of this case, and Vestin's claims are not covered under the policies."[1] We granted the petitioner's request for certiorari to review the decision of the court of appeals.

## ANALYSIS

¶ 7 The sole issue before us is whether the title insurance policies unambiguously applied only to actual assessments for a special improvement district and did not include an obligation to provide notice of an intent to create the district and levy the assessments. We conclude that only actual assessments

---

1. *Vestin Mortgage, Inc. v. First Am. Title Ins. Co.,* 2004 UT App 379, ¶ 20, 101 P.3d 398.

are covered and therefore affirm the decision of the court of appeals.

 ¶ 8 "An insurance policy is merely a contract between the insured and the insurer and is construed pursuant to the same rules applied to ordinary contracts."[2] Whether an ambiguity exists in a contract is a question of law to be reviewed for correctness.[3] When interpreting a contract, we must first look within the contract's four corners in order to determine the parties' intentions.[4] Additionally, we have said that

> [a]lthough this court has left some discretion to courts in determining whether ambiguity exists, at a minimum one universal standard applies to this determination: words and phrases do not qualify as ambiguous simply because one party seeks to endow them with a different interpretation according to his or her own interests.[5]

¶ 9 We begin our analysis by looking at the plain language of the policies, paying particular attention to the insuring clauses as did the court of appeals.[6] There are three insuring clauses within the policies that are relevant to Vestin's claim. These are the policy jacket cover, F.A. Form 31, and CLTA Form 104. We will review them in turn.

## I. THE POLICY JACKET COVER

¶ 10 The policy jacket cover states that First American "insures . . . against loss or damage . . . sustained or incurred by the insured by reason of" and then goes on to list nine insurable events or conditions. The condition at issue here is number two, addressing "[a]ny defect in or lien or encumbrance on the title." Vestin argues that the creation of the SID and the filing of the Notice of Intention did in fact create a defect in the title. First American, on the other hand, argues that neither the creation of the

SID nor the filing of the Notice of Intention created a defect. Instead, the actual levying of the assessment created the defect in the title, and the assessment was actually levied by the city of Eagle Mountain after the policies had been issued and thus falls outside the coverage of the policies.

 ¶ 11 Unlike other insurance contracts, title insurance does not insure against future events.[7] Thus, in order for a defect, lien, or encumbrance to fall within the insurance policy's coverage, it must have been in existence as of the effective date of the policy. At a minimum, an existing assessment that has been recorded would be considered a defect in the title and would be covered unless it had been otherwise exempted or excluded. The more difficult question, and the one before us now, is whether the recorded notice of the possibility of a future assessment also rises to the level of a defect, lien, or encumbrance. We conclude that it does not.

 ¶ 12 Neither the creation of the SID nor the filing of the Notice of Intention creates a lien on real property that affects the title. Utah Code section 17A–3–323 (2005) provides that an assessment becomes a lien on the property assessed on the day the ordinance levying the assessment becomes effective. In Vestin's case, the effective date of the ordinance that levied the assessment was after the date on which the policies were issued by First American. No lien could have attached as a result of this SID at the time First American provided the policies.

¶ 13 Additionally, neither the creation of the SID nor the Notice of Intention is an encumbrance on the property. No claim or liability attached to the title or property arises by virtue of the creation of the SID or Notice of Intention.[8] Likewise, no defect in

---

2. *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993).

3. *WebBank v. Am. Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 22, 54 P.3d 1139.

4. *See Fairbourn Commercial, Inc. v. Am. Hous. Partners, Inc.*, 2004 UT 54, ¶ 10, 94 P.3d 292.

5. *Saleh v. Farmers Ins. Exch.*, 2006 UT 20, ¶ 17, 133 P.3d 428.

6. *See Vestin Mortgage, Inc. v. First Am. Title Ins. Co.*, 2004 UT App 379, ¶ 9, 101 P.3d 398.

7. *See* 43 Am.Jur.2d *Insurance* § 529 (2003).

8. *See Black's Law Dictionary* 547 (7th ed.1999) (defining an encumbrance as "[a] claim or liability that is attached to property or some other right that might lessen its value, such as a lien or mortgage").

the title is occasioned by the creation of the SID or the Notice of Intention. Vestin argues that the term defect should be defined broadly so as not to give it the same meaning as lien or encumbrance. However, as the court of appeals explained,

> While we hold that neither the SID nor the notice in this case constituted defects in Vestin's title, we also recognize that "defect" may be defined as something less than a "lien" or "encumbrance." The fact that the SID and notice did not amount to a "defect," "lien," or "encumbrance," does not mean that all three terms are given the same meaning.[9]

¶ 14 It is important to remember that the "defect," "lien," or "encumbrance" mentioned in the policy jacket cover had to be *in* or *on* the *title*. The SID and Notice of Intention simply had no affect in or on the title. The policies unambiguously applied only to actual assessments and did not include an obligation to disclose the SID or Notice of Intention.

## II. F.A. FORM 31 AND CLTA FORM 104

■ ¶ 15 We also look to the other two insuring clauses for any obligation to provide notice of the creation of a SID and possible assessment. The first, F.A. Form 31, provides in part that First American will insure

> against loss which the Insured shall sustain by reason of any of the following matters:
>
> (1) Any incorrectness in the assurance which the Company hereby gives:
>
> (a) That there are no covenants, conditions, or restrictions under which the lien of the mortgage referred to in Schedule A can be cut off, subordinated, or otherwise impaired[.]

¶ 16 In addition, the CLTA Form 104, as it appears in the policy at issue, states that First American will insure

> against loss or damage which such insured shall sustain by reason of any of the following . . .

5. The existence of any subsisting tax or assessment lien which is prior to the insured mortgage except: **NONE**

6. The existence of other matters affecting the validity or priority of the lien of the insured mortgage, other than those shown in the policy except: **NONE**

¶ 17 Neither of these forms obligated First American to disclose information regarding the SID or the possibility of a future assessment. We find no ambiguity in this regard in either of these two forms. The forms, at their core, insure the mortgage liens that Vestin held in the property. Specifically, the forms insure against loss or damage that Vestin would sustain due to the *mortgage* being "cut off, subordinated, or otherwise impaired," the loss of priority, and "other matters affecting the validity" of the mortgage lien.

¶ 18 Neither the creation of the SID nor the Notice of Intention affected the priority or validity of the mortgage lien, nor was the mortgage lien "cut off, subordinated, or otherwise impaired." Once The Ranches defaulted on the loans, Vestin was able to exercise its rights under the trust deeds without any consequence arising from the SID and to take ownership through a nonjudicial foreclosure. Nothing in the Notice of Intention or in the SID affected the mortgage lien or affected the title Vestin acquired. Only the actual assessment ordinance has affected Vestin in any way, and only as to the ability to sell the property, not as to the validity of title. Vestin still holds a valid title to the property.

¶ 19 F.A. Form 31 and CLTA Form 104 both unambiguously applied only to actual assessments, and neither of the forms imposed an obligation on First American to disclose the SID or possible future assessment.

## III. THE EXCLUSION AND EXCEPTION SECTIONS OF THE POLICIES

■ ¶ 20 Vestin also seeks to extend coverage through the exclusions and exemptions that are enumerated in the policies, in partic-

---

9. *Vestin Mortgage, Inc. v. First Am. Title Ins. Co.,* 2004 UT App 379, ¶ 14, 101 P.3d 398.

ular through the governmental police power exception. As the court of appeals concluded, "Because the existence of the SID and the notice of Eagle Mountain's intention to levy assessments do not affect Vestin's title and, therefore, are not covered by the policies, the exclusions to the policies and the recorded police power exception to those exclusions are not applicable." [10] We agree. If there is *no* coverage, then an exception that prevents application of an exclusion from coverage has no application.

## CONCLUSION

¶ 21 A notice of intent to create a special improvement district and to levy assessments in the future did not give rise to coverage under the title policies or to an obligation on the title insurer to disclose that notice as part of the contract of insurance. The decision of the court of appeals is affirmed.

¶ 22 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice WILKINS' opinion.

10. *Vestin Mortgage, Inc. v. First Am. Title Ins. Co.*, 2004 UT App 379, ¶ 18, 101 P.3d 398.