2005 UT App 498

**Earl L. CLINE II, Plaintiff and Appellant,**

v.

**STATE of Utah, DIVISION OF CHILD AND FAMILY SERVICES, and/or Child Protective Services; and Judith Ann Forsyth aka Chris Forsyth, as an individual, Defendants and Appellees.**

No. 20041112–CA.

Court of Appeals of Utah.

Nov. 17, 2005.

Rehearing Denied Dec. 20, 2005.

Certiorari Denied April 21, 2006.

Earl L. Cline II, Salt Lake City, Appellant Pro Se.

Mark L. Shurtleff, Atty. Gen. and J. Clifford Petersen, Asst. Atty. Gen., Salt Lake City, for Appellees.

Before Judges BENCH, DAVIS, and McHUGH.

## MEMORANDUM DECISION

McHUGH, Judge:

¶ 1 Earl L. Cline II appeals the trial court's dismissal with prejudice of his claims against the Division of Child and Family Services (DCFS) and DCFS employee Judith Ann Forsyth. We affirm in part and reverse in part.

## BACKGROUND

¶ 2 "In determining whether the trial court properly granted a motion to dismiss, we accept the factual allegations in the complaint as true and consider them, and all reasonable inferences to be drawn from them, in the light most favorable to the non[ ]moving party. We recite the facts accordingly." *Wagner v. Clifton*, 2002 UT 109,- ¶ 2, 62 P.3d 440 (quotations and citation omitted).

¶ 3 Early in March 2002, the district court issued an ex parte protective order that required DCFS to investigate allegations that Cline had abused his oldest son, R.C. Several days later, Cline contacted DCFS by phone to inquire about the status of the ordered investigation. During that phone call, Cline informed a DCFS representative that DCFS had been ordered to investigate the abuse allegations and he also alleged that his wife (Wife) had abused their children, including R.C. (the children). Several days after this phone call, DCFS assigned Forsyth to investigate the allegations of abuse made by both Cline and Wife.

¶ 4 During her investigation, Forsyth interviewed Cline, Wife, and the children. Later in March 2002, Forsyth met with Cline and told him that she was not going to substantiate any of the claims of abuse against either Cline or Wife. Based in part upon Forsyth's report to the Guardian Ad Litem (GAL), the protective order was dismissed.

¶ 5 Soon after the dismissal of the protective order, a hearing was held in juvenile court concerning R.C. The juvenile court was informed of the previous existence of the protective order, including the allegations that Cline had abused R.C. As a result, the juvenile court ordered that a DCFS representative attend the hearing in order to discuss the abuse allegations. Forsyth attended that hearing, but she did not allege to the court that Cline had abused R.C.

¶ 6 Thereafter, the GAL contacted Forsyth to inquire about Cline's alleged spanking of R.C. As a result of the information she received from the GAL, Forsyth conducted a second investigation of the allegations of abuse against Cline, which included interviewing several of the children a second time. After she completed her second investigation, Forsyth substantiated the allegations of abuse against Cline based, at least in part, upon her assertion that several of the children told her during the second set of interviews that they had been bruised as a result of Cline spanking them.

¶ 7 Cline contends that these allegations were false and were proved to be false in the juvenile court. Cline asserts that Forsyth fabricated the allegations of abuse to help Wife retain custody of the children. Cline maintains that in all the investigations conducted by DCFS and Forsyth, "decisions have been made that g[a]ve greater weight to [Wife's] interest as a woman and mother than [Cline]'s interest as a man and father."

¶ 8 Sometime later in 2002, Cline filed a petition challenging the substantiation of abuse. Cline asserts that Forsyth provided false testimony while under oath during several hearings concerning this petition and during a hearing in which Cline was found to be in contempt of court. Cline maintains

that Forsyth's false allegations and testimony, at least in part, caused him to violate several court orders and required him to spend thirty days in jail for being found in contempt of court. Cline also asserts that DCFS and Forsyth failed to maintain the confidentiality of the information concerning the allegations of abuse against him.

¶ 9 In April 2003, pursuant to the Utah Governmental Immunity Act (the Act), *see* Utah. Code Ann. §§ 63–30–1 to –38 (1997 & Supp.2003),[1] Cline sent a notice of claim to DCFS, Forsyth, and the State of Utah. On June 10, 2004, Cline filed a complaint in district court against DCFS and Forsyth, both in her official and individual capacities, alleging causes of action for: (1) deprivation of his civil rights in violation of 42 U.S.C. § 1983, *see* 42 U.S.C.A. § 1983 (West 2003); (2) conspiracy to interfere with his civil rights in violation of 42 U.S.C. § 1985 and neglect to prevent that conspiracy in violation of 42 U.S.C. § 1986, *see* 42 U.S.C.A. §§ 1985, 1986 (West 2003);[2] (3) breach of confidentiality of records, child abuse, obstruction of justice, and perjury; (4) malicious prosecution; and (5) fraud, libel, and slander. In response, DCFS and Forsyth filed a motion to dismiss all of the claims contained in Cline's complaint, pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure. In an order dated October 6, 2004, the trial court granted the motion and dismissed with prejudice all of Cline's claims against DCFS and Forsyth. Cline appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 10 Cline argues that the trial court erred by dismissing his claims under rule 12(b)(6) of the Utah Rules of Civil Procedure. "Review of a grant of a motion to dismiss presents questions of law that we review for correctness, giving no deference to the decision of the [trial] court." *Sullivan v. Sulli-*

van, 2004 UT App 485,¶ 5, 105 P.3d 963 (alteration in original) (quotations and citation omitted).

## ANALYSIS

### I. Federal Civil Rights Claims

#### A. Section 1983

¶ 11 Cline claims that DCFS and Forsyth, in both her official and individual capacities, deprived him of his civil rights in violation of 42 U.S.C. § 1983. *See* 42 U.S.C.A. § 1983 (West 2003). It is well settled that a state and its agencies, as well as employees of that state and its agencies acting in their official capacities, do not fit within the meaning of a "person," *id.*, under section 1983. *See id.* (providing, by its terms, that it applies to "[e]very *person* " in violation of its provisions (emphasis added)); *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under [section] 1983"); *Duncan v. Wisconsin Dep't of Health & Family Servs.,* 166 F.3d 930, 935 (7th Cir.1999) (citing *Will* for the proposition that "it is plain … that neither the state agency itself nor the state employees in their official capacity can be sued for retrospective monetary relief, for the simple reason that the state is not a 'person' for purposes of [section] 1983"). Therefore, we affirm the trial court's dismissal of Cline's section 1983 claims against DCFS and Forsyth in her official capacity.

¶ 12 With respect to the claims against Forsyth in her individual capacity, Forsyth argues that she is absolutely immune from suit. We disagree. "In general, state government immunity statutes do not apply to suits brought under [section] 1983." *Baker ex rel. Baker v. Angus,* 910 P.2d 427, 432 (Utah Ct.App.1996) (citing *Felder v. Ca-*

---

1. We cite to the version of the Act in effect at the time Cline's complaint was filed.

2. Cline's complaint contains a broad cause of action for "Civil Rights Violations," which contains references and citations to multiple federal statutes and Constitutional provisions in addition to the three statutes we have referenced. *See* 42 U.S.C.A. §§ 1983, 1985, 1986 (West 2003). In

its order dismissing Cline's complaint, the trial court stated that "[a]ll claims against DCFS and … Forsyth are dismissed with prejudice." Concerning his federal claims, Cline argues on appeal only that the trial court erred by dismissing his claims under sections 1983, 1985, and 1986. Accordingly, we address only those federal claims.

*sey,* 487 U.S. 131, 139, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988)). Instead, "[t]he issue of immunity in a federal civil rights case is a matter of federal law." *Ambus v. Utah State Bd. of Educ.,* 858 P.2d 1372, 1377 (Utah 1993) (citing *Martinez v. California,* 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980)).

■■■ ¶ 13 The federal courts recognize that participants in the judicial process are entitled to immunity under certain circumstances. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 267–71, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). The scope of that immunity can be either "qualified" or "absolute." *Id.* at 268–69, 113 S.Ct. 2606. Under qualified immunity, "government officials are not subject to damages liability for the performance of their discretionary functions when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 268, 113 S.Ct. 2606 (citation omitted). In some limited circumstances, however, an official performs functions so essential to the judicial process that she is granted absolute immunity from suits for damages arising out of her actions. *See id.* at 268–71, 113 S.Ct. 2606. "Absolute immunity is ... necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed,* 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991).

■■■ ¶ 14 One of the special roles that traditionally has been protected by absolute immunity is that of a prosecutor actually engaged in the judicial process. *See Imbler v. Pachtman,* 424 U.S. 409, 421–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (holding that state prosecutor has absolute immunity for the initiation and pursuit of criminal charges). In considering whether the prosecutor's actions are absolutely privileged, the Supreme Court has adopted a "'functional approach'" that "looks to 'the nature of the function performed, not the identity of the actor who performed it.'" *Buckley,* 509 U.S. at 269, 113 S.Ct. 2606 (citations omitted). For example, although acts directly related to the judicial process are absolutely immune, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Id.* at 273, 113 S.Ct. 2606. Instead, only qualified immunity is available for these functions. *See id.* at 273–74, 113 S.Ct. 2606. "The more distant a function is from the judicial process, the less likely absolute immunity will attach." *Snell v. Tunnell,* 920 F.2d 673, 687 (10th Cir.1990).

■■■ ¶ 15 The United States Supreme Court explained the limits of absolute immunity for prosecutors, stating:

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other."

*Buckley,* 509 U.S. at 273, 113 S.Ct. 2606 (citation omitted). Thus, to prevail on a defense of absolute immunity, the prosecutor must meet his burden of establishing that he was functioning as an advocate at the time of the challenged conduct. *See id.* at 274, 113 S.Ct. 2606.

■■■ ¶ 16 In considering section 1983 claims brought against child welfare workers, the courts have analogized the activities of the worker with the role of a prosecutor. "The courts have looked to the particular task a defendant was performing and its nexus to the judicial process rather than deciding that social workers or guardians ad litem as a class are entitled to absolute immunity." *Snell,* 920 F.2d at 687. "An important prerequisite of absolute immunity in this context is that the defendant social worker

'act as an actual functionary of the court, not only in status or denomination but in reality.'" *Id.* at 689 (quoting *Gardner v. Parson,* 874 F.2d 131, 146 (3rd Cir.1989) (holding that guardian ad litem is entitled to absolute immunity for "exercising functions such as testifying in court")). Thus, Forsyth's specific conduct must be examined to determine whether she was acting as a functionary of the court in connection with a judicial proceeding.

■ ¶ 17 Taking the allegations of the complaint as true, which we must in the context of a motion to dismiss, *see Wagner v. Clifton,* 2002 UT 109, ¶ 2, 62 P.3d 440, Forsyth engaged in a second investigation of child abuse allegations against Cline without any authority from the court. Cline also alleged that she then falsified information to substantiate those allegations and testified fraudulently against Cline during the custody proceedings. Forsyth's testimony in court is absolutely privileged and cannot form the basis for Cline's claims under section 1983. *See, e.g., Briscoe v. LaHue,* 460 U.S. 325, 330–34, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (providing that immunity of parties and witnesses for testimony in judicial proceedings is well established); *Holloway v. Brush,* 220 F.3d 767, 775 (6th Cir.2000) (stating that social workers are absolutely immune when they are testifying under oath); *Spielman v. Hildebrand,* 873 F.2d 1377, 1382 (10th Cir. 1989) (stating that false testimony of child welfare worker protected by absolute immunity).

¶ 18 Cline's claim that Forsyth falsified information during her second investigation, however, falls outside the parameters of absolute immunity and is instead protected by qualified immunity. In *Buckley,* the United States Supreme Court held that the prosecutor was entitled to only qualified immunity for allegedly fabricating evidence during the preliminary investigation of the crime. *See* 509 U.S. at 274–75, 113 S.Ct. 2606 ("A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested."). Courts applying the *Buckley* analysis to social workers have tried to distinguish between actual participation in the judicial process and administrative or investigatory acts protected by only qualified immunity. Although the distinction is not always clear, the majority of courts hold that only qualified immunity is available during an investigation of abuse allegations. *See, e.g., Malik v. Arapahoe County Dep't of Soc. Servs.,* 191 F.3d 1306, 1313–16 (10th Cir.1999) (concluding that police officer's investigation of child abuse claims entitled to only qualified immunity); *Snell,* 920 F.2d at 689–91 (holding that child welfare workers investigating child abuse claims entitled to only qualified immunity); *Achterhof v. Selvaggio,* 886 F.2d 826, 830–31 (6th Cir.1989) (holding that investigation of a child abuse allegation and placement of parent's name on a central registry were investigatory or administrative and entitled to only qualified immunity); *see also Holloway,* 220 F.3d at 776–77 (holding that only qualified immunity available for social worker's failure to accurately inform the mother as to the status of custody proceedings); *Spielman,* 873 F.2d at 1382–83 (holding that social worker entitled to only qualified immunity for nontestimonial acts); *Meyers v. Contra Costa County Dep't of Soc. Servs.,* 812 F.2d 1154, 1156–58 (9th Cir.1987) (holding that only qualified immunity available for actions of child welfare worker prior to the institution of judicial proceedings).

■ ¶ 19 Forsyth's actions in this investigatory stage are entitled to qualified immunity. " 'When a defendant pleads qualified immunity, the plaintiff has the heavy burden of establishing: (1) that the defendant's actions violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions.'" *Malik,* 191 F.3d at 1314 (quoting *Greene v. Barrett,* 174 F.3d 1136, 1142 (10th Cir.1999)). Under circumstances similar to those present here, the Tenth Circuit concluded that the plaintiff had failed to meet this test. *See Spielman,* 873 F.2d at 1383.

¶ 20 In *Spielman,* the plaintiffs had entered into a preadoption contract with the Kansas Department of Social and Rehabilitation Services (SRS) for placement of two children. *See id.* at 1379. Eventually, the Spielmans sought to adopt only one of the

children. *See id.* at 1379. A SRS casework-er, Sara Hildebrand, disagreed with that result and sought an ex parte order to remove both children from the home. *See id.* at 1379–80. The trial court issued the ex parte order on the basis of Hildebrand's representations, which were later proved to be fraudulent. *See id.* at 1380. Although the trial court issued the ex parte order, it was never enforced. *See id.* The Spielmans were notified of and allowed to participate through counsel in an evidentiary hearing before the child they wished to adopt was temporarily removed from their home. *See id.* At this hearing, Hildebrand's testimony was consistent with a written summary of her false representations in support of the ex parte order. *See id.*

¶ 21 The Tenth Circuit concluded that Hildebrand was entitled to absolute immunity for her testimony at trial, but that her nontestimonial activities, including the written summary, were subject to only qualified immunity. *See id.* at 1382–83. The *Spielman* court held that the section 1983 claims against Hildebrand were barred by qualified immunity because plaintiffs could not show a violation of any clearly established constitutional or statutory right. *See id.* at 1383. Although Hildebrand's representations were untrue, the Spielmans were afforded procedural due process. *See id.* at 1385. They participated in an evidentiary hearing and were permitted to challenge those statements.[3] *See id.* Thus, "[t]he Spielmans were clearly accorded an opportunity to be heard in a meaningful manner prior to deprivation of any liberty interest." *Id.*

¶ 22 Justice Scalia suggested a similar approach to the application of qualified immunity in his concurring opinion in *Buckley. See* 509 U.S. at 279–82, 113 S.Ct. 2606 (Scalia, J., concurring). In *Buckley,* the petitioner claimed that the prosecutor had fabricated false evidence in order to obtain an indictment. *See id.* at 262, 113 S.Ct. 2606. The Supreme Court held that the prosecutor was entitled to qualified, as opposed to absolute, immunity for his allegedly fraudulent acts

during the preindictment investigation. *See id.* at 275, 113 S.Ct. 2606. In response to the dissent's concern about the effect of that decision, Justice Scalia stated:

> Insofar as [the petitioner's false evidence claims] are based on respondents' supposed knowing *use* of fabricated evidence before the grand jury and at trial, ... the traditional defamation immunity provides complete protection from suit under [section] 1983. If "reframed ... to attack the preparation" of that evidence, the claims are unlikely to be cognizable under [section] 1983, since petitioner cites, and I am aware of, no authority for the proposition that the mere preparation of false evidence, as opposed to its use in a fashion that deprives someone of a fair trial or otherwise harms him, violates the Constitution.

*Id.* at 281–82, 113 S.Ct. 2606 (fourth alteration in original) (citations omitted).

¶ 23 Here, no harm came from the allegedly false second investigation conducted by Forsyth until she actually participated in the judicial process. Her testimony is absolutely privileged. Further, Cline was given an opportunity to challenge the evidence presented through Forsyth at the hearing in the trial court. Thus, the section 1983 claims against Forsyth are barred by qualified immunity because Cline cannot show a violation of any clearly established constitutional or statutory right.

### B. Section 1985

¶ 24 Cline claims that DCFS and Forsyth, in her official and individual capacities, conspired to interfere with his civil rights in violation of 42 U.S.C. § 1985. *See* 42 U.S.C.A. § 1985 (West 2003).

¶ 25 Our conclusion that neither DCFS nor Forsyth in her official capacity are a "person" for purposes of section 1983 applies equally to Cline's section 1985 claims. *See id.* § 1985(1)-(3) (providing, by its terms, that it applies to "two or more *persons*" in violation of its provisions (emphasis added));

---

**3.** The *Spielman* court "[a]ssum[ed], without deciding, that the preadoptive status of the relationship at issue [was] a sufficient liberty interest to afford the Spielmans some level of due process protection." *Spielman v. Hildebrand,* 873 F.2d 1377, 1385 (10th Cir.1989).

*Austin v. State Indus. Ins. Sys.,* 939 F.2d 676, 678 (9th Cir.1991) (recognizing the principle that "[a state agency] and its employees, when acting in their official capacities, are not 'persons' within the meaning of section 1983 and section 1985"); *Owens v. Haas,* 601 F.2d 1242, 1247 (2d Cir.1979) (stating that the same definition of " 'person' " applies to both section 1983 and section 1985); *Menard v. Board of Trs. of Loyola Univ. of New Orleans,* No. 03–2199, 2004 WL 856641 at *6, 2004 U.S. Dist. LEXIS 6882, at *19 (E.D.La. Apr. 19, 2004) ("To determine the meaning of 'person' under [s]ection 1985, courts can look to jurisprudence on the meaning of 'person' under [s]ection 1983. A state agency and its employees acting in their official capacities are not 'persons' within the meaning of [s]ections 1983 and 1985." (citations omitted)); *Santiago v. New York Dep't of Corr. Servs.,* 725 F.Supp. 780, 783 (S.D.N.Y.1989) ("It is well settled that a state and its agencies are not 'persons' under [sections] 1983 and 1985." (quotations and citation omitted)), *rev'd on other grounds,* 945 F.2d 25 (2d Cir.1991); *Weathers v. West Yuma County Sch. Dist. R–J–1,* 387 F.Supp. 552, 555–56 (D.Colo.1974) (stating that if an entity "is not a 'person' within the meaning of [section] 1983 for any purpose, it is also not a 'person' under [section] 1985"), *aff'd,* 530 F.2d 1335 (10th Cir. 1976). Accordingly, Cline's section 1985 claims against DCFS and Forsyth in her official capacity must fail.

¶ 26 Forsyth, in her individual capacity, is the only remaining party to which Cline's section 1985 claims could apply. Because a conspiracy under section 1985 requires the action of "two or more persons," 42 U.S.C.A. § 1985(1)-(3), Cline's section 1985 claim against Forsyth in her individual capacity must also fail. *See Santiago,* 725 F.Supp. at 783–84 (holding that the plaintiff's complaint, which named only one state agency and one individual as defendants, failed to state a claim under section 1985 because the state agency was not a "person" under section 1985 and the remaining individual defendant did not satisfy the "two or more persons" requirement of section 1985).

¶ 27 Therefore, we affirm the trial court's dismissal of Cline's section 1985 claims

against DCFS and Forsyth, both in her official and individual capacities.

### C. Section 1986

¶ 28 Cline also alleges that DCFS and Forsyth, individually and officially, neglected to prevent a section 1985 conspiracy in violation of 42 U.S.C. § 1986. *See* 42 U.S.C.A. § 1986 (West 2003). Because we have concluded that Cline cannot state a claim under section 1985, all of his section 1986 claims also fail. *See Taylor v. Nichols,* 558 F.2d 561, 568 (10th Cir.1977) ("Inasmuch as the [s]ection 1985 action is insufficient, the allegations under [section] 1986 also fail. A claim under [s]ection 1986 exists for refusal to take positive action where the circumstances demand to prevent acts which give rise to a cause of action under [s]ection 1985. In view then of this relationship, there cannot be a valid claim under [s]ection 1986 unless there is also a claim under [s]ection 1985. There being no valid [s]ection 1985 claim, there can be no action under [s]ection 1986."). Therefore, we affirm the trial court's dismissal of Cline's section 1986 claims against DCFS and Forsyth, both in her official and individual capacities.

### II. State Claims

### A. Criminal Violations

¶ 29 In assessing Cline's claims under state law, we first examine his causes of action for breach of confidentiality of records, child abuse, obstruction of justice, and perjury. Although Cline alleges these claims as civil causes of action against DCFS and Forsyth, each claim arises under state criminal law. The existence of criminal liability does not create automatically a corresponding claim for civil damages.

> When a statute makes certain acts unlawful and provides criminal penalties for such acts, but does not specifically provide for a private right of action, we generally will not create such a private right of action. *See Milliner v. Elmer Fox & Co.,* 529 P.2d 806, 808 (Utah 1974) (refusing to create private right of action where a criminal statute did not provide for private right of action, stating that was "a matter best left

to the legislature"); *Broadbent v. Board of Educ.*, 910 P.2d 1274, 1278 (Utah Ct.App. 1996) (stating that "the courts of this state are not generally in the habit of implying a private right of action based upon state law, absent some specific direction from the [l]egislature"); *Richards Irrigation Co. v. Karren*, 880 P.2d 6, 11 (Utah Ct. App.1994) (holding that trial court did not err by dismissing party's claims where statute and constitutional provision upon which claims were based did not "create a private right of action, but merely provid[ed] for criminal remedies").

*Youren v. Tintic Sch. Dist.*, 2004 UT App 33,¶ 4, 86 P.3d 771 (mem.) (alterations in original), *cert. denied*, 94 P.3d 929 (Utah 2004). The Utah Code provides criminal penalties for breach of confidentiality of records, child abuse, obstruction of justice, and perjury, but does not provide for a private right of action for any of those acts. *See* Utah Code Ann. §§ 62A–4a–412, 76–5–109, 76–8–306, 76–8–502 to –504 (2003 & Supp. 2005). "Accordingly, we refuse to create a private right of action under [these statutory provisions] when the legislature has not seen fit to do so." *Youren*, 2004 UT App 33 at ¶ 4, 86 P.3d 771. Therefore, we affirm the trial court's dismissal of these claims against DCFS and Forsyth, both in her official and individual capacities.

### B. Malicious Prosecution

¶ 30 Next, we address Cline's cause of action for malicious prosecution. "In order to successfully maintain a claim for malicious prosecution, a party must establish four elements...." *Amica Mut. Ins. Co. v. Schettler*, 768 P.2d 950, 959 (Utah Ct.App. 1989). The first of these elements requires a plaintiff to establish that there is "[a] criminal proceeding instituted or continued by the defendant against the plaintiff." *Id.* Because neither DCFS nor Forsyth instituted a criminal proceeding against Cline, his claim for malicious prosecution must fail. *See id.* ("The failure to establish any one of the four elements is fatal to the cause of action.").

Therefore, we affirm the trial court's dismissal of this claim against DCFS and Forsyth, both in her official and individual capacities.

### C. Fraud, Libel, and Slander

¶ 31 We next evaluate Cline's causes of action for fraud, libel, and slander.[4] The trial court dismissed these claims because it concluded that DCFS and Forsyth were immune from suit under the Act. *See* Utah Code Ann. §§ 63–30–1 to –38 (1997 & Supp. 2003). To determine whether the Act bars Cline's claims against DCFS and Forsyth in her official capacity, we undertake the following three-step inquiry set forth in *Ledfors v. Emery County School District*, 849 P.2d 1162 (Utah 1993):

> First, was the activity the entity performed a governmental function and therefore immunized from suit by the general grant of immunity contained in section 63–30–3? Second, if the activity was a governmental function, has some other section of the Act waived that blanket immunity? Third, if the blanket immunity has been waived, does the Act also contain an exception to that waiver which results in a retention of immunity against the particular claim asserted in this case?

*Id.* at 1164 (citation omitted).

¶ 32 We must first determine whether the actions of DCFS and Forsyth in her official capacity fall under the definition of a governmental function. *See* Utah Code Ann. § 63–30–2(4)(a),–3(1). Section 63–30–2(4)(a) broadly defines the term "governmental function." *Id.* § 63–30–2(4)(a) (providing that governmental function "means any act, failure to act, operation, function, or undertaking of a governmental entity"). "Given this broad definition, the alleged actions or omissions of DCFS and its employee[ ] ... fall within the definition of a governmental function." *Sanders v. Leavitt*, 2001 UT 78,¶ 26, 37 P.3d 1052 (holding that DCFS was immune from claims that it was culpable for abuse inflicted by third parties that resulted in death of nine-month-old child).

---

4. Cline's complaint also contains causes of action for "intentional [mis]representation" and "intentional defamation." We have interpreted his claim for "intentional [mis]representation" to be subsumed under his claim for fraud. Further, we have interpreted his broader claim for "intentional defamation" to be covered by his more specific claims for libel and slander.

¶ 33 "We next look to whether some section of the Act has waived that blanket immunity, and if·so, whether an exception to that waiver exists, thereby retaining immunity." *Id.* at ¶ 27. In relevant part, section 63–30–10 provides:

Immunity from suit of all governmental entities is waived for injury proximately cause by a negligent act or omission of an employee committed within the scope of employment except if the injury arises out of, in connection with, or results from:

. . . .

(2) . . . libel, slander, deceit . . . ;

. . . .

(6) a misrepresentation by an employee whether or not it is negligent or intentional;

. . . .

Utah Code Ann. § 63–30–10(2), (6). Accordingly, even if immunity is somehow waived by another portion of the Act, the Act contains specific exceptions for libel, slander, and misrepresentation—one of the required elements of a fraud claim. *See id.; DeBry v. Noble,* 889 P.2d 428, 443 (Utah 1995) (providing that one element of fraud is "a false representation of an existing material fact"). Therefore, both DCFS and Forsyth in her official capacity are immune from suit under the Act for Cline's causes of action for libel, slander, and fraud.

¶ 34 We must also evaluate these state civil claims as they apply to Forsyth in her individual capacity. Although the Act relates only to immunity as it applies to the government and its agents acting in their official capacity, Forsyth may be immune under concepts of common law. In assessing the application of any such privilege, the specific conduct from which the allegations arise must be considered. Cline asserts that (1) Forsyth gave false in-court testimony under oath and (2) falsified information during her second investigation of the child abuse claims against him. We address each of these claims in turn.

¶ 35 The trial court correctly concluded that Forsyth was absolutely immune from Cline's claims for fraud, libel, and slander against her in her individual capacity based on her in-court testimony. Under Utah law, an absolute privilege is available to protect participants in judicial proceedings from claims for damages stemming from their actions. *See Price v. Armour,* 949 P.2d 1251, 1256 (Utah 1997) ("[J]udges, jurors, witnesses, litigants, and counsel in judicial proceedings have an absolute privilege against defamation." (quotations and citations omitted)).

¶ 36 To determine whether Forsyth qualifies for this judicial proceeding privilege, we must apply the three-part test announced by the Utah Supreme Court in *Allen v. Ortez,* 802 P.2d 1307 (Utah 1990):

First, the statement must have been made during or in the course of a judicial proceeding. Second, the statement must have some reference to the subject matter of the proceeding. Finally, the one claiming the privilege must have been acting in the capacity of a judge, juror, witness, litigant, or counsel in the proceeding at the time of the alleged defamation.

*Id.* at 1312–13 (footnote and citations omitted). Forsyth's testimony easily meets this test. It was made during the judicial proceeding, was relevant to the subject matter of the proceeding, and was made while she was a witness. The trial court correctly concluded that Forsyth is absolutely immune from claims for damages based upon her statements made as a witness.

¶ 37 Forsyth's second investigation, which led to the substantiation of the child abuse allegations, is more problematic because her status as a participant in a judicial proceeding at that point is unclear. Based on the allegations of the complaint, which we must accept as true, *see Wagner v. Clifton,* 2002 UT 109, ¶ 2, 62 P.3d 440, the court-requested investigation had been concluded and the protective order dismissed. At the time of the second investigation, "nothing in the [complaint] suggests that [Forsyth] was designated as an actual or prospective witness in the custody proceeding, and nothing suggests that [counsel for a party] or [the domestic commissioner] requested her opinion concerning the possible abuse." *See Allen,* 802 P.2d at 1313. Thus, it cannot be said

at this stage of the litigation that Forsyth's second investigation is protected by the judicial proceeding privilege by her status as a witness.

¶ 38 Forsyth may nevertheless have protection to the extent her conduct is "an integral part of the judicial process." *Bailey v. Utah State Bar*, 846 P.2d 1278, 1280 (Utah 1993) (quotations and citation omitted) (holding that Utah State Bar's failure to disclose the contents of unadjudicated complaints against attorney part of quasi-judicial function of bar).

¶ 39 As has been discussed in the federal context, social workers involved in proceedings relating to allegations of child abuse have been found to have a role similar to that of a prosecutor. *See Snell v. Tunnell*, 920 F.2d 673, 687–89 (10th Cir.1990). "Whether a person or entity should be afforded judicial immunity depends upon the specific work or function performed." *Bailey*, 846 P.2d at 1280. Here, Cline alleges that Forsyth reopened a closed investigation, fabricated evidence, and maliciously substantiated the complaint of child abuse against him. If the performance of that investigation was an integral part of the judicial process, her actions are privileged even if fraudulently performed. *See Black v. Clegg*, 938 P.2d 293, 296 (Utah 1997) (holding that filing of certificate with supreme court integral part of judicial process even if certificate inaccurate). "[I]f the challenged acts fall within the categories constituting a prosecutor's duties, the acts are part of his official function, even if he acts imperfectly." *Id.*

¶ 40 Although prosecutors have been granted absolute quasi-judicial immunity for some activities, the United States Supreme Court has been unwilling to extend that absolute immunity to administrative or investigatory functions. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273–74, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).[5] Although the Utah Supreme Court has not addressed this issue, we believe it would also limit the absolute privilege to the judicial process itself while affording only qualified immunity for investigations leading to those proceedings. Consequently, we conclude that Cline has stated a claim upon which relief can be granted against Forsyth in her individual capacity for fraud arising out of her second investigation, as opposed to her trial testimony.[6]

¶ 41 Finally, concerning Cline's claims for libel and slander against Forsyth in her individual capacity based upon her second investigation, we conclude that these claims are barred by the applicable statute of limitations. *See* Utah Code Ann. § 78–12–29(4) (2002). Section 78–12–29 provides that claims for libel and slander must be brought within one year. *See id.* According to Cline's complaint, Forsyth's second investigation was complete, at the latest, by November 22, 2002, the date of the first hearing held on Cline's petition challenging the substantiation of abuse against him. At that hearing, Forsyth reported on the results of her second investigation. Cline, as a participant in the events that were investigated, was put on notice that Forsyth found facts in her second investigation differently than he contends they occurred. At the very least, he was on notice from that point forward that Forsyth's second investigation included allegedly false and defamatory information about him. Yet, Cline did not file his complaint until June 10, 2004, over one year after receiving this notice of the content of her second investigation. Therefore, his claims for libel and slander against Forsyth in her individual capacity are barred and we affirm the trial court's dismissal of these claims.

## CONCLUSION

¶ 42 We affirm the trial court's dismissal with prejudice of all of Cline's claims against DCFS and Forsyth, with the exception of Cline's claim against Forsyth in her individu-

5. The *Buckley* decision, *see Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), and its application to persons involved in child welfare services is discussed in greater detail in the section of this opinion addressing Cline's claims under section 1983, *see* 42 U.S.C.A. § 1983 (West 2003).

6. We express no opinion as to the merits of this claim. Instead, we simply hold that assuming all of the allegations of the complaint and all reasonable inferences therefrom are true, Cline has stated a claim upon which relief can be granted.

al capacity for fraud arising only out of her second investigation. We reverse the trial court's dismissal of this specific claim and remand for proceedings consistent with this opinion.

¶ 43 I CONCUR: JAMES Z. DAVIS, Judge.

¶ 44 I CONCUR IN THE RESULT: RUSSELL W. BENCH, Associate Presiding Judge.