**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 26, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BV JORDANELLE, LLC, an Idaho
limited liability company; BV
LENDING, LLC, an Idaho limited
liability company,

      Plaintiffs - Appellants,

v.

OLD REPUBLIC NATIONAL
TITLE INSURANCE COMPANY, a
Minnesota corporation,

      Defendant - Appellee.

No. 15-4127

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:14-CV-00351-DN)**
_____

Matthew M. Cannon (Michael R. Johnson, and Douglas M. Monson, with
him on the briefs), Ray Quinney & Nebeker, P.C., Salt Lake City, Utah, for
Plaintiffs-Appellants.

Alexander Dushku (Peter C. Schofield, and Justin W. Starr, with him on
the brief), Kirton McConkie, Salt Lake City, Utah, for Defendant-Appellee.
_____

Before **HOLMES**, **MURPHY**, and **BACHARACH**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

This appeal involves a dispute over the scope of an insurance policy. The insureds, which we collectively identify as "BV," obtained a mortgage on real property as security for a loan and acquired a title-insurance policy from Old Republic National Title Insurance Company. When the borrower defaulted, BV foreclosed on the property. But when a municipal assessment went unpaid, the municipality foreclosed, too. BV and the municipality litigated in state court; the municipality prevailed and obtained title to the property.

After losing title to the property, BV sued Old Republic in federal district court. There BV alleged that Old Republic had breached the title-insurance policy by (1) refusing to compensate BV for its loss of the property and (2) failing to defend BV in the state-court litigation.[1] The district court granted judgment on the pleadings to Old Republic, concluding that the policy did not entitle BV to either payment for its loss of the property or a defense in the state-court suit. BV appeals, and we affirm.

---

[1] BV also brought a claim for breach of the implied covenant of good faith and fair dealing, which is not at issue here.

**I.     The parties dispute whether the title-insurance policy covers BV's loss.**

In this appeal, BV contends that the title-insurance policy covers the loss sustained when the municipality foreclosed on the property.[2]

**A.     BV foreclosed on the insured property after the borrower had defaulted on its loans.**

In 2008, BV loaned approximately $6.3 million to a firm, PWJ Holdings. PWJ Holdings owned the Aspens Property, a tract of land located in Wasatch County, Utah. As security for the loans, BV obtained a mortgage on a specific parcel within the Aspens Property. BV then acquired a title-insurance policy from Old Republic to cover loss caused by defects in title to this parcel. (We refer to this parcel as the "insured property.")

PWJ Holdings defaulted on the loans, and BV foreclosed on the property in 2009. BV then acquired title to the property at a trustee's sale.

---

[2]     Because the district court ruled on a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), we draw this summary from the complaint, taking all of the complaint's factual allegations as true and drawing all reasonable inferences in BV's favor. *See Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) ("A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)."); *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126-27 (10th Cir. 1998) ("In reviewing a decision on a motion to dismiss, we accept the factual allegations in the complaint as true and we resolve all reasonable inferences in the plaintiff's favor.").

**B.     After the borrower failed to pay a municipal assessment, the municipality foreclosed on the property, terminating BV's ownership interest.**

Utah law authorizes local governments to establish improvement districts for the purpose of constructing improvements to benefit properties within those districts. Utah Code Ann. §§ 17B-1-202(1)(a), 17B-2a-401 to -406. To fund these improvements, the districts may levy assessments against the properties located within those districts. Utah Code Ann. §§ 17B-1-103(g), 17B-2a-402(1)(b).

The Aspens Property—and, therefore, the insured property—is located within the "Jordanelle Special Service District, Utah Special Improvement District No. 2005-2," an improvement district established by Wasatch County.

The improvement district was created through a sequence of events beginning in 2005. At that time, the Wasatch County Council adopted a "Notice of Intention," which announced an intention to create an improvement district that would levy assessments against properties within the district; the assessments would be used to fund improvements. In 2006, the Wasatch County Council issued the "Creation Resolution," which formally created the improvement district. By 2008, BV alleges, the improvement district had already begun installing improvements, including some extending onto the insured property.

4

In 2009, the improvement district issued an "Assessment Ordinance," which levied assessments against properties within the district, including the Aspens Property. Under Utah law, an improvement district's assessment constitutes a lien against the assessed property that is senior to all other liens. *See* Utah Code Ann. §§ 17B-1-114, 17B-2a-402(1)(b); *see also* Appellants' App'x at 100 (Assessment Ordinance provision stating that an assessment lien "shall be superior to the lien of any trust deed [or] mortgage"). Consequently, the improvement district's lien had priority even though BV's mortgage was older.

PWJ Holdings never made any payments toward the assessment. As a result, the improvement district began foreclosure proceedings in 2010. BV sued the improvement district in state court, seeking to stop the foreclosure and retain title. But in 2012, the state district court issued a decree allowing the improvement district to complete the foreclosure. As a result, the improvement district acquired title to the insured property, extinguishing BV's interest.

BV did not learn about the improvement district's lien on the insured property until 2010, after BV had already acquired the property. After learning about the lien, BV sought compensation from Old Republic under the title-insurance policy, contending that it covered BV's loss of the insured property. Old Republic disagreed, maintaining that the policy did not cover BV's loss. This litigation followed.

5

## II. Our standard of review is de novo, and we apply Utah law.

When reviewing the district court's ruling under Federal Rule of Civil Procedure 12(c), we apply the same standard of review used for motions to dismiss under Rule 12(b)(6). *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). Under that standard, our review is de novo. *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013).

In applying de novo review, "[w]e accept the well-pled factual allegations in the complaint as true [and] 'resolve all reasonable inferences in the plaintiff's favor.'"[3] *Id.* (quoting *Morse v. Regents of the Univ. of*

---

[3] Many of BV's arguments involve documents other than the complaint. With the complaint, BV attached the Old Republic policy, the 2006 Creation Resolution, and the 2009 Assessment Ordinance. *See* Appellants' App'x at 34-64 (2006 Creation Resolution), 65-88 (Old Republic policy), 89-124 (2009 Assessment Ordinance). Those documents are considered part of the complaint, and we may consider their contents in reviewing the district court's Rule 12(c) ruling. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (stating that a court may consider "attached exhibits" when ruling on a Rule 12(b)(6) motion; *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (noting that a Rule 12(c) motion for judgment on the pleadings is treated the same as a Rule 12(b)(6) motion to dismiss).

The complaint's attachments did not include the 2005 Notice of Intention. Nevertheless, in reviewing the Rule 12(c) ruling, we "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *See Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). The complaint refers to the Notice of Intention, which is central to BV's claims. Appellants' App'x at 11. Moreover, no one questions the authenticity of the Notice of Intention. Under these

*Colo.*, 154 F.3d 1124, 1126-27 (10th Cir. 1998)). The resulting question is whether the complaint states a valid claim. *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991).

The validity of the claim turns on the meaning and applicability of the title-insurance policy. All parties agree that Utah law governs the interpretation of the policy. Thus, we apply Utah law. *See Carolina Cas. Ins. Co. v. Nanodetex Corp.*, 733 F.3d 1018, 1022 (10th Cir. 2013) (applying the state law that both parties agreed was applicable). Under Utah law, insurance policies are governed by the same rules governing other contracts. *First Am. Title Ins. Co. v. J.B. Ranch, Inc.*, 966 P.2d 834, 836 (Utah 1998). These rules provide that if the contractual language is unambiguous, the court ascertains the parties' intentions based solely on the contractual language. *Bakowski v. Mountain States Steel, Inc.*, 52 P.3d 1179, 1184 (Utah 2002).

### III. BV is not entitled to coverage under the policy.

In entering judgment on the pleadings for Old Republic, the district court concluded in part that BV was not entitled to coverage. BV disagrees, arguing that it is entitled to compensation under six covered risks defined by the policy:

1.     Risk 2, which covers loss caused by a defect in, or a lien or encumbrance on, title to the insured property,

circumstances, we may consider the document even though it was not attached to the complaint.

2.     Risk 2(c), which covers loss caused by encroachments that affect title,

3.     Risk 3, which covers loss caused by unmarketable title,

4.     Risk 5(c), which covers loss caused by enforcement of subdivision regulations,

5.     Risk 8, which covers loss caused by a governmental taking, and

6.     Risk 11(a), which covers loss caused by the imposition of a statutory lien for services, labor, or material used in construction.

*See* Appellants' App'x at 137-38. We reject BV's arguments for coverage under each of these covered risks. Accordingly, we affirm.

### A.     BV's argument under Risk 2 is foreclosed by the Utah Supreme Court's opinion in *Vestin II*.

Risk 2 covers loss caused by "[a]ny defect in or lien or encumbrance on" title to the insured property. *Id.* at 137. Under Utah law, this language covers only encumbrances on title that already existed when the policy was issued. *Vestin Mortg., Inc. v. First Am. Title Ins. Co.* (*Vestin II*), 139 P.3d 1055, 1057 (Utah 2006). Thus, to trigger coverage under Risk 2, BV must specify some defect in, or lien or encumbrance on, title to the insured property that already existed when the policy was issued in 2008.

The actual assessments would not qualify, for the improvement district did not levy those assessments until July 2009, after the policy had

8

been issued. Instead, BV points to actions taken by the municipality prior to issuance of the policy in 2008. These actions, BV claims, included (1) the issuance of the 2005 Notice of Intention and the 2006 Creation Resolution and (2) the installation of physical improvements on the insured property. BV contends that these actions rendered an assessment inevitable, creating an encumbrance before the policy was issued.

BV's argument is invalid under the Utah Supreme Court's opinion in *Vestin II*. There, the court addressed a title-insurance policy provision virtually identical to Risk 2. *See Vestin II*, 139 P.3d 1055, 1057 (Utah 2006) (quoting policy language covering loss caused by "[a]ny defect in or lien or encumbrance on the title" (alteration in original)). The insured in *Vestin II* argued, as BV argues here, that encumbrances and defects on title include not only actual assessments, but also notices of intention and creation resolutions issued in anticipation of future assessments. *See id.*

The Utah Supreme Court rejected this argument, concluding that only an actual assessment creates a "claim or liability attached to the title or property." *Id.* Therefore, the court concluded, only an actual assessment can constitute an encumbrance on, or defect in, title. *Id.* at 1057-58. As a result, the court held that the policy language applies only to an actual assessment, not notice of an intention to levy an assessment or creation of an improvement district. *Id.* at 1056.

9

Under *Vestin II*, actions preceding the assessment cannot constitute a defect, a lien, or an encumbrance on title under Risk 2. Because the improvement district did not levy an assessment until after the policy was issued, Risk 2 does not cover BV's loss regardless of any other actions that the improvement district had taken earlier.

BV presents three arguments to distinguish *Vestin II*:

1. The improvement district had already installed physical improvements on the insured property by the time that the policy was issued.

2. The Utah Court of Appeals' opinion in *Vestin Mortgage, Inc. v. First American Title Insurance Co.* (*Vestin I*), 101 P.3d 398 (Utah Ct. App. 2004), which the Utah Supreme Court affirmed in *Vestin II*, suggests that an encumbrance can be created when a future assessment becomes a certainty.

3. *Vestin II* conflicts with the Utah Supreme Court's earlier opinion in *Brewer v. Peatross*, 595 P.2d 866 (Utah 1979).

We reject each argument.

BV notes that by the time the policy was issued, the improvement district had already installed physical improvements on the insured property. In BV's view, this fact distinguishes *Vestin II* because there the court held only that notices of intention and creation resolutions do not constitute encumbrances on title. According to BV, *Vestin II* does not exclude the possibility that physical improvements can constitute encumbrances on title under Risk 2.

10

We reject this argument. Although *Vestin II* does not address the legal effect of physical improvements, the court's reasoning precludes any argument that physical improvements constitute an encumbrance on title under Risk 2. In *Vestin II*, the Utah Supreme Court held that "[n]o claim or liability attached to the title or property arises by virtue of" the notice of an intention to levy an assessment. 139 P.3d 1055, 1057 (Utah 2006). For that reason, the court concluded, notices preceding an assessment cannot constitute encumbrances "*in* or *on* the *title*." *Id.* at 1058 (emphasis in original).

For the same reason, we reject BV's reliance on physical improvements on the insured property. "Only the actual assessment ordinance has affected [BV] in any way." *Id.* Thus, physical improvements on the insured property do not constitute encumbrances on title under Risk 2.

BV also relies on the opinion of the Utah Court of Appeals in *Vestin I*, 101 P.3d 398 (Utah Ct. App. 2004), which the Utah Supreme Court affirmed in *Vestin II*, 139 P.3d 1055 (Utah 2006). In *Vestin I*, BV argues, the Utah Court of Appeals suggested that notices can sometimes constitute encumbrances on title if the notices render future assessments "a certainty." *See Vestin I*, 101 P.3d at 403 (quoting *Bel–Air Motel Corp. v. Title Ins. Corp. of Pa.*, 444 A.2d 1119, 1122 (N.J. Super. Ct. Law Div. 1981)). Thus, BV maintains, *Vestin I* requires a finder of fact to determine

whether the improvement district's prior actions rendered the 2009 assessment "a certainty."

We disagree. In applying Utah law, we must follow pronouncements of state law made by the Utah Supreme Court, not Utah's intermediate appellate court. *See Clark v. State Farm Mut. Auto. Ins. Co.*, 433 F.3d 703, 709 (10th Cir. 2005). Thus, when the state's highest court has clearly spoken, we need not rely on statements of law made by the state's intermediate appellate court for further clarification of state law. *See Sellers v. Allstate Ins. Co.*, 82 F.3d 350, 352 (10th Cir. 1996).

Even if *Vestin I* endorses the "certainty" approach advocated by BV, the Utah Supreme Court's opinion in *Vestin II* clearly held that an encumbrance on title does not arise until an actual "claim or liability attached to the title or property arises." *Vestin II*, 139 P.3d at 1057. We must follow *Vestin II*, which forecloses BV's position regardless of any contrary suggestion in *Vestin I*.

Finally, BV argues that *Vestin II* conflicts with the Utah Supreme Court's earlier opinion in *Brewer v. Peatross*, 595 P.2d 866 (Utah 1979). In *Brewer*, a grantee of a warranty deed claimed that the grantor had breached the implied covenant against encumbrances by failing to disclose the existence of a special improvement district. *Brewer*, 595 P.2d at 867. The state supreme court agreed, holding that the grantor's failure to disclose the existence of the special improvement district could constitute

12

a breach of the implied covenant against encumbrances even if no assessment had been levied by the time that the deed was conveyed. *Id.* at 868. According to BV, this holding conflicts with *Vestin II*.

For the sake of argument, we may assume (without deciding) that BV's reading of *Brewer* is correct. Even with this assumption, BV's larger argument would fail. When a state supreme court issues two inconsistent statements of state law, our precedents require us to follow the statement of law that is most recent. *See Wood v. Eli Lilly & Co.*, 38 F.3d 510, 513 (10th Cir. 1994) (applying the more recent statement of state law made by a state supreme court notwithstanding potential conflicts with the court's earlier statements); *see also Clark v. State Farm Mut. Auto. Ins. Co.*, 433 F.3d 703, 709 (10th Cir. 2005) (stating that in a diversity case, "we apply the most recent statement of state law by the [applicable state] supreme court").[4] Thus, assuming (without deciding) that *Brewer* conflicts with

---

[4]    In some circumstances, a state supreme court might resolve an internal conflict in the court's case law by relying on the older of two conflicting pronouncements. In those circumstances, we would need to determine whether to follow our federal diversity precedent or state law in deciding between the two pronouncements. We need not address this issue here, for Utah law—like our federal diversity precedent—apparently requires reliance on the more recent of two conflicting pronouncements by the Utah Supreme Court. *See In re Adoption of J.S.*, 358 P.3d 1009, 1022 (Utah 2014) (following the more recent pronouncement of Utah law when "two lines of cases [were] unquestionably incompatible").

13

*Vestin II*, we must follow *Vestin II* because it is the more recent of the two opinions.[5]

We reject BV's efforts to distinguish *Vestin II* and conclude that Risk 2 does not cover BV's loss.

**B.      BV's claim under Risk 2(c) fails because BV did not raise this claim in the complaint.**

BV argues that it is entitled to coverage under Risk 2(c) of the policy, which covers loss caused by the encroachment of a physical improvement onto the insured property. We reject this argument because the complaint asserted a claim only for loss caused by the improvement district's foreclosure. That claim did not address loss caused by the physical improvements.

---

[5]      BV argues that we should certify this issue to the Utah Supreme Court to resolve the putative conflict between *Brewer* and *Vestin II*. We decline to do so. The choice to certify a state-law question to a state supreme court falls within our discretion. *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988). "Certification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law." *Id.*

We recognize that certification may sometimes be warranted to resolve a conflict between two conflicting opinions by a state supreme court. In our view, however, the circumstances do not justify certification to the Utah Supreme Court. Because *Vestin II* squarely addresses the state-law issue raised by this appeal, we can rely on that opinion to decide this appeal without further guidance from the Utah Supreme Court. *Brewer*, by contrast, involved different subject matter than *Vestin II*—a claim for breach of a warranty deed, rather than a title-insurance policy. Because *Vestin II* is more recent and more directly applicable to this appeal than *Brewer*, certification is unnecessary.

14

Risk 2(c) includes coverage for loss caused by "[a]ny encroachment . . . affecting the Title that would be disclosed by an accurate and complete land survey" of the insured property. Appellants' App'x at 137. This provision encompasses "encroachments of existing improvements located on the [insured property] onto adjoining land, and encroachments onto the [insured property] of existing improvements located on adjoining land." *Id.*

BV argues that the improvement district had already installed physical improvements on the insured property when the policy was issued. Those improvements, BV contends, constituted "encroachments onto the [insured property] of existing improvements located on adjoining land." *Id.* BV adds that those encroachments would have been disclosed by a survey of the insured property at the time the policy was issued. Therefore, BV maintains, the existence of physical improvements on the insured property triggers coverage under Risk 2(c).

We can entertain this claim only if it appeared in the complaint. *See Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). Therefore, we may consider BV's argument under Risk 2(c) only if the complaint raises a distinct claim for loss caused by the improvement district's physical improvements. *See id.* (stating that the "court cannot review matters outside of the complaint"); *accord Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256-57 (3d Cir. 2004) (declining to consider a claim raised in briefing on a Rule 12(c) motion, but not in the complaint); *Car*

15

*Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (limiting review of a ruling on a Rule 12 motion to the complaint and declining to consider "expanded statements" in the plaintiff's briefing on the motion).

The complaint raises a claim for loss from the improvement district's foreclosure, not from the existence of physical improvements. The principal cause of action raised by the complaint, for breach of contract, reads:

> Plaintiffs are entitled to indemnification from Old Republic . . . for any and all losses and damages incurred by Plaintiffs as a result of the assertion that the [improvement district's assessment] against the Insured Property . . . had a priority senior to [BV's mortgage] and was not extinguished by [BV's foreclosure on the insured property], and by the subsequent foreclosure of [the improvement district's] lien . . . .

Appellants' App'x at 27-28. This cause of action alleges loss caused by the improvement district's foreclosure, not by the improvement district's installation of physical improvements.

BV points to a different excerpt from the complaint—Paragraph 67—to support its position. But when read in context with what follows, Paragraph 67 addresses only a claim based on the foreclosure, not the physical improvements themselves:

> 67. [W]hile the Assessment Ordinance was not adopted until July of 2009, the Improvements that the Assessment Ordinance was enacted to pay for had been installed well prior to that time and, indeed, many of the Improvements were

16

installed well prior to the effective date of the Old Republic Policy . . . .

68. In other words, as of the effective date of the Old Republic Policy, the fact that [the improvement district] would ultimately enact the Assessment Ordinance, and would ultimately look to BV to pay substantial amounts for public improvements allegedly benefitting the Insured Property, had become a certainty and was not mere speculation.

*Id.* at 23-24. Paragraphs 67 and 68 confirm that the complaint raises a claim only for loss caused by the improvement district's foreclosure.

It is true that Paragraph 67 alleges that the improvement district had already installed improvements when the policy was issued. Nevertheless, Paragraph 67 does not allege any loss from these improvements.

Paragraph 68 uses the alleged existence of the improvements to support BV's argument that the eventual levy of assessments was certain, not speculative. As discussed above, that contention bears on the applicability of Risk 2 for encumbrances on, or defects in, title. *See* Part III(A), above.

Nothing in these paragraphs suggests a claim based on loss from the installation of physical improvements, and BV points to no other portion of the complaint for a claim involving loss because of the physical improvements. In these circumstances, we reject BV's claim for coverage under Risk 2(c).

17

**C.    BV has not preserved its claim for coverage under Risk 3.**

On appeal, BV argues for the first time that coverage is triggered under Risk 3 of the policy. Risk 3 covers loss caused by unmarketable title. BV did not raise this argument in the district court. Consequently, the argument is not preserved. *See United States v. Teague*, 443 F.3d 1310, 1314 (10th Cir. 2006).

We have discretion to review forfeited arguments for plain error. *Id.* But BV has made no argument under the plain-error standard. As a result, we decline to consider BV's argument for coverage under Risk 3. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130-31 (10th Cir. 2011) (stating that a failure to argue plain error on appeal "marks the end of the road" for an argument presented for the first time on appeal).

**D.    BV's claim under Risk 5 fails because notice of the improvement district's intention to enforce a subdivision regulation had not been recorded when the policy was issued.**

Risk 5 covers loss caused by the "enforcement of any . . . ordinance . . . relating to . . . the subdivision of land." Appellants' App'x at 137. Invoking Risk 5, BV maintains that the 2009 Assessment Ordinance related to the subdivision of land because (1) the ordinance levied an assessment

18

against the insured property for the entire Aspens Property and (2) the insured property constitutes only one parcel within the Aspens Property.[6]

But Risk 5 provides coverage only if "notice" of the "intention to enforce" the subdivision-related ordinance had been "recorded in the Public Records" by the time that the policy was issued. *Id.* We can assume, without deciding, that the 2009 Assessment Ordinance related to a subdivision of land. Even so, the claim fails because BV has not alleged facts showing a recording of the notice of an intention to enforce a subdivision-related ordinance.

To satisfy the recording requirement, BV points to the Creation Resolution, which was issued and recorded in 2006. But this document would not have provided the notice required by the policy. The Creation Resolution establishes the improvement district and lists the properties to be assessed. In listing these properties, the Creation Resolution suggests that the improvement district would levy proportional assessments against each individual parcel within the Aspens Property. *See id.* at 58 (Creation Resolution listing separate parcels within the Aspens Property). Thus, the Creation Resolution does not show an intent to enforce a subdivision-related ordinance.

---

[6]     BV suggests that in separate litigation, the improvement district justified this assessment on the ground that the Aspens Property had been unlawfully subdivided, allowing the improvement district to levy the assessment for the entire Aspens Property against the insured property. *See* Appellants' Opening Br. at 17-18 & n.4.

19

BV also relies on the Notice of Intention, which allegedly shows the improvement district's plan to levy an assessment against the insured property for the entire Aspens Property. The improvement district ultimately levied the assessment through the 2009 Assessment Ordinance. As a result, BV argues, the Notice of Intention establishes the improvement district's intention to enforce an ordinance related to the subdivision of land.

But, possibly by accident, the Notice of Intention was not included in the recorded Creation Resolution: The Creation Resolution refers only to the 2005 Notice of Intention and includes a designated (but empty) space for insertion of the Notice of Intention. *See id.* at 37, 47 (relevant pages of the Creation Resolution). Because the recorded Creation Resolution omits the Notice of Intention, nothing in the recorded document reflects the improvement district's intention to enforce an ordinance related to the subdivision of land. As a result, BV is not entitled to coverage under Risk 5.

### E. BV's claim under Risk 8 fails because any possible governmental taking would have taken place after issuance of the policy.

BV also invokes Risk 8 of the policy, which covers loss caused by "[a]ny taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge." *Id.* at 138. Invoking Risk 8, BV argues that "the Creation Resolution and resulting

20

lien" combined to create a governmental taking. Appellants' Opening Br. at 25.

We disagree. For the sake of argument, we can assume (without deciding) that the Creation Resolution and lien constituted a governmental taking. Even so, the text of Risk 8 covers loss only if the loss was caused by a governmental taking that preceded issuance of the policy. Because the lien was created after issuance of the policy, Risk 8 does not trigger coverage for loss from the Creation Resolution and resulting lien.

### F.  BV's claim under Risk 11 fails because the improvement district's lien against the insured property is not for services, labor, or material used in construction.

BV also invokes Risk 11 of the policy, which covers loss caused by "[t]he lack of priority of the Insured Mortgage . . . over any statutory lien for services, labor, or material arising from construction of an improvement or work related to" the insured property. Appellants' App'x at 138. Pointing to Risk 11, BV argues that the assessment was used to fund improvements that would benefit the insured property. The improvement district's lien against the insured property, BV adds, arose based on that assessment. Therefore, BV contends, the improvement district's lien against the insured property constitutes a "statutory lien" under Risk 11.

We disagree, for the improvement district's lien against the insured property does not fall within the class of statutory liens defined by Risk

21

11. This provision extends coverage for loss caused only by statutory liens "for services, labor, or material" used in construction. *Id.* The improvement district's lien against the insured property is a lien for the collection of a municipal assessment, not for anything used in construction. *See* 1 Joyce D. Palomar, *Title Insurance Law* § 5:16 (2015 ed.) (stating that this policy language "does not . . . cover municipal liens for special assessments for . . . public works").

It is immaterial that the assessment might yield revenue to fund improvements benefiting the insured property. *See Cole v. Home Title Guar. Co.*, 285 N.Y.S.2d 914, 915 (N.Y. App. Div. 1967) (rejecting a claim for loss caused by a municipal assessment under a mechanics-lien provision in a title-insurance policy). Even if the assessment were to benefit the insured property, the improvement district's lien secures payment of the assessment—not services, labor, or material used in construction. Consequently, the improvement district's lien against the insured property does not fall within the class of liens covered under Risk 11. In these circumstances, BV's loss did not trigger Risk 11.[7]

---

[7]     Old Republic also argues that BV failed to (1) invoke Risks 3, 5, 8, and 11 when submitting a claim and (2) include those claims in the complaint. We need not reach these arguments because BV's arguments for coverage under these risks fail on other grounds.

**IV.** **We affirm the district court's ruling that Old Republic had no duty to defend BV in the state-court litigation.**

In district court, BV also sued Old Republic for failing to pay for BV's litigation expenses in the state-court litigation between BV and the improvement district. The district court entered judgment on the pleadings for Old Republic on this claim, concluding that the policy did not require Old Republic to defend BV in the state-court proceedings. BV challenges this ruling on appeal. We reject this challenge because it has been inadequately developed.

The policy requires Old Republic to "provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to" BV. Appellants' App'x at 141. BV argues that this provision required Old Republic to provide a defense in the state-court litigation because BV was trying to halt the foreclosure, an action that BV regarded as within the policy's coverage.

Under Utah law, an insurer assumes a duty to defend its insured when "the allegations in the underlying complaint . . . [,] if proved, could result in liability under the policy." *Speros v. Fricke*, 98 P.3d 28, 39 (Utah 2004) (quoting *Nova Cas. Co. v. Able Constr., Inc.*, 983 P.2d 575, 578 (Utah 1999)). Thus, Old Republic had a duty to defend BV only if one or more of the claims in the state-court proceedings could result in liability under the policy. *See id.*; *see also* Appellants' App'x at 141 (policy provision

23

imposing a duty to defend only when a "third party asserts a claim covered by [the] policy"). The burden falls on BV to make this showing on appeal. *See Hernandez v. Starbuck*, 69 F.3d 1089, 1093 (10th Cir. 1995).

On appeal, BV has not adequately developed this challenge. BV's opening brief does not

- specify which claims were raised in the state-court litigation or by whom or

- explain how any of those claims might trigger liability under the policy.

And aside from a pair of two-page excerpts, BV's appendix includes none of the filings from the state-court proceedings. *See* Appellants' App'x at 436-38, 439-41. Thus, we have no way to ascertain which claims in the state-court litigation—if any—"could result in liability under the policy." *Speros*, 98 P.3d at 39.

Under these circumstances, we conclude that BV failed to adequately develop its appeal point on Old Republic's duty to defend. Accordingly, we decline to address this appeal point. *See Fuerschbach v. Sw. Airlines Co.*, 439 F.3d 1197, 1209-10 (10th Cir. 2006) (declining to consider an argument that was inadequately developed on appeal).[8]

---

[8]    In a footnote in the opening brief, BV asserts that Old Republic did not address the duty to defend when moving in district court for judgment on the pleadings. This is incorrect; in moving for judgment on the pleadings, Old Republic requested dismissal of BV's duty-to-defend claim. Appellants' App'x at 257.

24

## V. Disposition

We affirm.