FILED
United States Court of Appeals
Tenth Circuit

February 15, 2022

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

COWBOYS FOR TRUMP, INC.; KARYN GRIFFIN; COUY GRIFFIN,

    Plaintiffs - Appellants,

v.

MAGGIE TOULOUSE OLIVER, in her official capacity as Secretary of State of New Mexico,

    Defendant - Appellee.

No. 21-2015
(D.C. No. 2:20-CV-00587-GJF-SMV)
(D. N.M.)

_____

### ORDER AND JUDGMENT[*]

_____

Before **TYMKOVICH**, Chief Judge, **PHILLIPS**, and **McHUGH**, Circuit Judges.

_____

This case considers constitutional challenges to the enforcement of New Mexico's election laws regulating campaigns and political groups and whether Cowboys for Trump and its members have standing to challenge their enforcement.

Standing doctrine under Article III of the Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies[.]'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).  One requirement of

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

constitutional standing is that a plaintiff has "suffered an injury in fact." *Id.* at 560 (internal quotation marks omitted). The party invoking federal jurisdiction has the burden to establish an injury in fact. *Id.* at 561.

The district court concluded that Plaintiffs did not meet their burden to show an injury in fact that would confer constitutional standing to bring a First Amendment challenge to several provisions of New Mexico's Campaign and Reporting Act, N.M. Stat. Ann. §§ 1-19-25 to -37 (CRA). The court therefore granted Defendant judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and dismissed the action. Plaintiffs appeal.

Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I.  Background[1]

Plaintiffs are Cowboys For Trump; its founder, Couy Griffin; and a former member, Karyn Griffin. Cowboys for Trump was formed to raise money and engage in advocacy within New Mexico. At the time of the complaint, Plaintiffs engaged in educational advocacy in New Mexico, among other things, in support of Donald Trump and his policies. Their "issue advocacy . . . relate[s] to their

---

[1] Because the district court dismissed this action on the pleadings under Rule 12(c), we draw the factual background from Plaintiffs' complaint, "taking all of the complaint's factual allegations as true and drawing all reasonable inferences in [Plaintiffs'] favor." *BV Jordanelle, LLC v. Old Republic Nat'l Title Ins. Co.*, 830 F.3d 1195, 1199 n.2 (10th Cir. 2016).

mission promoting the causes of secure borders, the unborn's protection from abortion, and the Second Amendment." Aplt. App. at 13 ¶ 31.

In 2019, New Mexico Secretary of State Maggie Oliver determined that Cowboys for Trump was a political committee within the meaning of the CRA.[2] Plaintiffs then brought a pre-enforcement action under 42 U.S.C. § 1983 against the Secretary in her official capacity "to vindicate [the] right of freedom of speech and association to organize and vocally support the President of the United States, Donald J. Trump and[] his agenda[.]" Aplt. App. at 6 ¶ 1. They sought to enjoin the enforcement of certain reporting, registration, and disclaimer requirements of the CRA as violative of their own First Amendment rights to freedom of speech and privacy in association as well as those same rights of their donors, who, they alleged, face a risk of harassment and retaliation if their identities are made public. Plaintiffs also asked for a declaratory judgment that the Federal Election Campaign Act preempts the CRA in certain respects.

A brief overview of the CRA requirements Plaintiffs sought to enjoin enforcement of, and in particular the role independent expenditures play in

---

[2] The CRA defines "political committee" in relevant part as "(3) an association that consists of two or more persons whose primary purpose is to make contributions to candidates, campaign committees or political committees or make coordinated expenditures or any combination thereof" or "(4) an association that consists of two or more persons whose primary purpose is to make independent expenditures and that has received more than five thousand dollars ($5,000) in contributions or made independent expenditures of more than five thousand dollars ($5,000) in the election cycle." N.M. Stat. Ann. § 1-19-26(Q)(3)-(4).

triggering those requirements, is helpful to understand Plaintiffs' factual allegations and the disposition of this case.

As relevant to Plaintiffs' allegations, the reporting and disclaimer requirements they sought to enjoin enforcement of are triggered when a "person" (defined as "an individual or an entity," N.M. Stat. Ann. § 1-19-26(P)) makes "independent expenditures."[3]  The subsections of the reporting statute Plaintiffs challenged, *id.* § 1-19-27.3(C) and (D)(2), require "[a] person who makes independent expenditures" to report to the Secretary the name and address of each contributor whose contributions exceed certain dollar thresholds and the amount contributed, provided that the contributions were "earmarked or made in response to a solicitation to fund independent expenditures," *id.* § 1-19-27.3(C).  The disclaimer statute requires that when a person makes an "independent expenditure for an advertisement" in excess of certain dollar amounts, the person must "ensure that the advertisement contains the name of the candidate, committee or

---

[3]  The CRA defines "independent expenditure" as "an expenditure . . . made by a person other than a candidate or a campaign committee" that is "not a coordinated expenditure as defined in the [CRA]," and is "made to pay for an advertisement that" either "(a) expressly advocates for the election or defeat of a clearly identified candidate or the passage or defeat of a clearly identified ballot question," "(b) is susceptible to no other reasonable interpretation than as an appeal to vote for or against a clearly identified candidate or ballot question," or "(c) refers to a clearly identified candidate or ballot question and is published and disseminated to the relevant electorate in New Mexico within thirty days before the primary election or sixty days before the general election at which the candidate or ballot question is on the ballot."  N.M. Stat. Ann. § 1-19-26(N).

4

other person who authorized and paid for the advertisement." *Id.* § 1-19-26.4(A).[4]

The registration requirement Plaintiffs sought to enjoin enforcement of is N.M. Stat. Ann. § 1-19-26.1(C). It requires a political committee to file with the Secretary "[a] statement of organization" identifying the name, address, and purpose of the committee; "any sponsoring organization"; the names and addresses of the political committee's officers; and any bank account the committee uses "to receive or make contributions or make expenditures." *Id.* § 1-19-26.1(C). It does not refer to independent expenditures.

The CRA provides civil and criminal penalties for violations of its provisions. *See id.* §§ 1-19-34.6, -36.

Against this statutory background, we return to the procedural history of this case. Plaintiffs alleged that Cowboys for Trump had accepted contributions (in some cases from donors of more than $5,000) but had not and would not make the independent expenditures that trigger the reporting and disclaimer requirements. *See* Aplt. App. at 8 ¶ 8 ("Plaintiffs have not and will not make independent expenditures in support of candidates or ballot questions and they also have not and will not make financial contributions to candidates[,]" including "candidates for state, local, and city elections in . . . New Mexico."); *id.*

---

[4] The disclaimer requirement also applies to any "person who makes a campaign expenditure" or "a coordinated expenditure," N.M. Stat. Ann. § 1-19-26.4(A), but Plaintiffs did not allege that those types of expenditures apply to them.

5

at 9 ¶ 13 ("This indisputable fact is key, Cowboys for Trump has not expended a single penny on independent expenditures in support of or in opposition to any candidate for office").

The Secretary filed a motion for judgment on the pleadings. She advanced several reasons why Plaintiffs failed to show an injury in fact to support constitutional standing, including that they had repeatedly alleged they had not and would not make independent expenditures. The Secretary also argued that Plaintiffs failed to show any redressable injury, which is another requirement of constitutional standing, *see Lujan*, 504 U.S. at 561, and that Plaintiffs failed to state a preemption claim.

The district court acknowledged Plaintiffs' allegations that, as a political committee, Cowboys for Trump is required to register with the Secretary. But the court observed that "[a]t the heart of the dispute are the disclosure requirements triggered by certain threshold amounts of 'independent expenditures.'" Aplt. App. at 61. The court then determined that Plaintiffs' allegations that they had not made and would not make any independent expenditures were dispositive of their challenge to the reporting and disclaimer requirements. *See id.* at 69 (concluding that "[t]he disclosure requirements at issue *only* apply to those making 'independent expenditures,'" and citing only the disclaimer and reporting statutes). Accordingly, the court held that neither Plaintiffs nor their donors would suffer any injury in fact, and therefore Plaintiffs lacked constitutional

6

standing to assert either their own First Amendment rights or those of their donors.

The district court did not otherwise address Plaintiffs' challenge to enforcement of the registration requirement, nor did it rely on redressability. And based on the lack of standing to challenge the reporting and disclaimer requirements, the court did not reach the preemption claim, which it characterized as "merit-based." Aplt. App. at 63 n.7. The court dismissed the complaint without prejudice but with leave "to file an amended complaint that cures the errors that have nullified the original version." *Id.* at 72. Plaintiffs did not file an amended complaint, so the court dismissed the action without prejudice.

## II.   Discussion

We review de novo a district court's ruling on a Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings, applying "the same standard of review used for motions to dismiss under Rule 12(b)(6)." *BV Jordanelle, LLC v. Old Republic Nat'l Title Ins. Co.*, 830 F.3d 1195, 1200 (10th Cir. 2016). To survive such a motion, a complaint's well-pleaded factual allegations, accepted as true, must state a facially plausible claim to relief. *Burnett v. Mortg. Elec. Reg. Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (internal quotation marks omitted).

### A.    Reporting and Disclaimer Claims

####    1.    Associational Standing

Plaintiffs argue that the district court erred in determining they lacked associational standing to raise the claims of their donors.  For an association to have such standing, it must demonstrate, among other things, that "its members would otherwise have standing to sue in their own right." *Chamber of Commerce of United States. v. Edmondson*, 594 F.3d 742, 756 (10th Cir. 2010) (internal quotation marks omitted).  As mentioned, one requirement of constitutional standing is an "injury in fact," defined as "an invasion of a legally protected interest which is . . . concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (internal quotation marks omitted).

Plaintiffs base their associational standing argument solely on *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958).  But we agree with the district court that *NAACP* is distinguishable because, as we explain, it involved a compelled disclosure, whereas Plaintiffs' allegations regarding independent expenditures show they have not and will not be compelled to disclose donor information if they engage in issue advocacy.

*NAACP* involved a court order enforcing a state request for production of the names and addresses of the NAACP's members.  *See id.* at 452–53.  Under those circumstances, the Supreme Court held that the NAACP had standing to

8

represent the First Amendment interests of its members "to be protected from *compelled disclosure* by the State of their affiliation with the [NAACP] as revealed by the membership lists." *Id.* at 458 (emphasis added).  In contrast here, Plaintiffs alleged that they had not made and would not make any independent expenditures that would trigger the reporting or disclaimer requirements. Therefore, compelled disclosure of donor information per those requirements is not plausible.  Absent a plausible chance of such disclosure, there can be no chilling effect on any donor's willingness to donate.  *See D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004) (explaining that a "chilling effect [on the exercise of a plaintiff's First Amendment rights] can, in some circumstances, amount to a sufficient injury to support standing" if it "arise[s] from an objectively justified fear of real consequences, which can be satisfied by showing a credible threat of prosecution or other consequences following from the statute's enforcement").[5]

In their opening brief, Plaintiffs wholly ignore the effect of their affirmative disclaimer regarding independent expenditures.  Those allegations mandate the conclusion that Plaintiffs have not established their donors have suffered or are likely to suffer an injury in fact due to the reporting or disclaimer

---

[5] Plaintiffs fault the district court for not taking into account the "uniquely permissive" nature of First Amendment standing analysis.  *See* Aplt. Br. at 7, 9.  But they cite no source for this characterization, and our independent research has uncovered none.  To the extent Plaintiffs intend "uniquely permissive" to refer to the "chilling effect" basis of First Amendment standing, our analysis, like the district court's, takes that into account.

requirements. As a result, Plaintiffs cannot establish associational standing because they have failed to show that their donors "would otherwise have standing to sue in their own right." *Edmondson*, 594 F.3d at 756 (internal quotation marks omitted).

### 2. Individual Standing

Plaintiffs' next argument, that they have standing to assert their own First Amendment rights to freedom of speech and privacy in association, fares no better. They allege, for the first time on appeal, that the Secretary "ordered [Cowboys for Trump] to disclose [its] contributions and expenditures, despite [Cowboys for Trump] not having made independent expenditures." Aplt. Br. at 11.[6] But they did not make this allegation in their complaint, so we must disregard it. *See Mayfield v. Bethards*, 826 F.3d 1252, 1258 (10th Cir. 2016) ("[A]t the motion-to-dismiss stage our review is limited to the sufficiency of the allegations in the [c]omplaint."). And based on the allegations Plaintiffs did make—that they have not and will not make independent expenditures—they cannot demonstrate either that they will be subject to the CRA's reporting or disclaimer requirements, or that those requirements will chill their speech. As the district court observed, "the CRA has not plausibly chilled Plaintiffs' speech

---

[6] Plaintiffs also argue that "redressability is not in doubt," Aplt. Br. at 10–11, but the district court did not reach redressability, and neither do we.

because Plaintiffs have not alleged that, but for the existence of the CRA, they would be making independent expenditures." Aplt. App. at 69.

### 3.    Reply Brief Arguments

In their reply brief, Plaintiffs advance new allegations and provide documentary evidence showing that, before they filed their complaint, the Secretary had sent Cowboys for Trump a "Notice of Final Action" to register as a political committee, file all delinquent finance reports, and pay $7,800 in fines for failing to comply with the CRA's reporting requirements. Also, before the complaint was filed, Cowboys for Trump challenged the Secretary's notice by requesting binding arbitration, and the Secretary filed a motion for summary judgment with the arbitrator.

Plaintiffs do not explain why they did not include these allegations in their complaint, and for several reasons, we decline to consider them or the related documentary evidence attached to their reply brief. First, "[w]e generally do not consider arguments raised for the first time in a reply brief." *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 676 n.9 (10th Cir. 2016). Second, our review in this case is confined to whether the complaint's allegations are sufficient to withstand a motion for judgment on the pleadings, and we will not look beyond the record on appeal. *See Summum v. Callaghan*, 130 F.3d 906, 913 n.9 (10th Cir. 1997) (denying motion to file a video as part of the appellate record on review of a dismissal for failure to state a claim, stating "our review is confined

11

to allegations made in the . . . complaint"). Third, the district court dismissed the complaint in December 2020 with leave to amend. But Plaintiffs did not avail themselves of that opportunity to cure the standing defects. Had they done so, they could have included these allegations as well as the fact that, shortly after the complaint was filed, the arbitrator summarily granted the Secretary's motion for summary judgment and awarded her all the relief she sought.[7]

Finally, we reject Plaintiffs' suggestion to take judicial notice of state-court filings related to confirmation of the arbitration award, all of which occurred after the district court dismissed the action. Those events are irrelevant because "standing is determined at the time the action is brought, and we generally look to when the complaint was first filed, not to subsequent events." *Mink v. Suthers*, 482 F.3d 1244, 1253–54 (10th Cir. 2007) (citation omitted).

Plaintiffs also argue that *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373 (2021), conclusively establishes that Plaintiffs have associational standing.[8] We disagree. *Americans for Prosperity* involved a California regulation requiring tax-exempt charities renewing their state registrations to disclose IRS forms containing the names and addresses of donors who

---

[7] Plaintiffs point out that the Secretary noted in her motion for judgment on the pleadings that an arbitrator had upheld her determination that Cowboys for Trump is a political committee subject to the CRA and had to register and pay fines for noncompliance with the CRA's reporting requirements. But our review is limited to the allegations in the complaint. *See Summum*, 130 F.3d at 913 n.9.

[8] Because the Supreme Court decided *Americans for Prosperity* after Plaintiffs filed their opening brief, it was appropriately raised in their reply brief.

12

contributed more than $5,000 in a tax year. *See id*. at 2380. The Supreme Court held that the regulation "impose[d] a widespread burden on donors' [First Amendment] associational rights" and was "facially unconstitutional, because it fails exacting scrutiny in a substantial number of applications judged in relation to its plainly legitimate sweep." *Id*. at 2389 (brackets, ellipsis, and internal quotation marks omitted). But standing was not at issue in the case. Unlike Plaintiffs here, who disclaimed having engaged in, or an intent to engage in, the activity (independent expenditures) triggering the challenged donor-disclosure requirements, each of the charities had renewed its registration but declined to make the required donor disclosures associated with registration, *see id.* at 2380. *Americans for Prosperity*, therefore, is inapplicable to the standing issues in this case.

### B.    Preemption Claim

Plaintiffs sought a declaratory judgment that a provision of the Federal Election Campaign Act (FECA), 52 U.S.C. § 30143(a),[9] preempts an exemption in the registration statute for a political committee if it is "located in another state and . . . registered with the federal election commission," reports to that "commission all expenditures for and contributions made to reporting individuals in New Mexico," and files information regarding such expenditures and

---

[9] Section 30143(a) provides that the FECA "supersede[s] and preempt[s] any provision of State law with respect to election to Federal office."

contributions with the Secretary.  N.M. Stat. § 1-19-26.1(E).[10]  As noted, the district court did not reach this claim because it had determined that Plaintiffs lacked standing regarding the reporting and disclaimer requirements.  But "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).  Consequently, the fact that Plaintiffs lacked standing to challenge the reporting and disclaimer requirements is not dispositive of their preemption claim.

Nonetheless, the registration exemption plainly does not apply to Cowboys for Trump, because Plaintiffs did not allege Cowboys for Trump is "located in another state," § 1-19-26.1(E).  Plaintiffs therefore cannot show an injury in fact sufficient to challenge whether the FECA preempts the exemption.  *See Lujan*, 504 U.S. at 560 (an injury in fact requires "a legally protected interest" that can be "inva[ded]" (internal quotation marks omitted)).  Even if the exemption applied to Cowboys for Trump, the claim is illogical, because the exemption would excuse Cowboys for Trump from having to register as a political committee with the Secretary, which is what Cowboys for Trump appears to desire.

---

[10]  At the time Plaintiffs filed their complaint and the district court entered judgment, this subsection was designated (E).  But effective July 1, 2021, it has been redesignated without substantive change as subsection (G).  For consistency with the record, we will refer to it as subsection (E).

Thus, Cowboys for Trump lacks standing because it cannot demonstrate that the exemption would cause it an injury in fact.[11]

## C.　Registration Requirement Claim

Finally, and as discussed previously, the registration requirement requires a political committee to file with the Secretary "[a] statement of organization" identifying the name, address, and purpose of the committee; "any sponsoring organization"; the names and addresses of the political committee's officers; and any bank account the committee uses "to receive or make contributions or make expenditures." N.M. Stat. Ann. § 1-19-26.1(C). Under this provision, Cowboys for Trump could establish standing by alleging a credible threat of enforcement (which happened after the complaint was filed) that a political committee alone triggers the obligation to register with the Secretary, *see id.* § 1-19-26.1(C), and a political committee's failure to register exposes violators to civil and criminal penalties, *id.* §§ 1-19-34.6, -36.

---

[11] Plaintiffs also asked for a broader declaration that the FECA preempts the CRA to the extent the CRA "requires associations of people to register with or disclose receipts and expenditures to the New Mexico Secretary of State." Aplt. App. at 18 ¶ 57. In their opening brief, however, they discuss only preemption as to § 1-19-26.1(E). They have therefore waived appellate review of their broader preemption claim. *See Becker v. Kroll*, 494 F.3d 904, 913 n.6 (10th Cir. 2007).

Even so, we will not disturb the district court's ruling because Plaintiffs failed to include allegations in their complaint related to registration and forfeited these arguments without arguing plain error. [12]

First, Plaintiffs failed to properly challenge the district court's error in their opening brief. *See Becker v. Kroll*, 494 F.3d 904, 913 n.6 (10th Cir. 2007). There are some exceptions to our general rule to not entertain arguments made for the first time in a reply brief. *Headrick v. Rockwell Intern. Corp.*, 24 F.3d 1272, 1278 (10th Cir. 1994) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192 (D.C. Cir. 1992)). But although this court has made exceptions and heard jurisdictional arguments raised for the first time in a reply brief to remove uncertainty over jurisdictional requirements, *Murphy v. Derwinski*, 990 F.2d 540, 543 n. 8 (10th Cir. 1993), we will not make an exception here. The exceptions made in considering jurisdictional arguments not raised in the opening brief are usually for defendants challenging standing because, "as courts of limited jurisdiction, we are affirmatively obliged to consider whether the constitutional and statutory authority exist[s] for us to hear each dispute put to us—and we must decline to proceed if they are not." *Herbert*, 974 F.2d at 196. But "the converse of that rule does not hold[.]" *Id.*

---

[12] Had Plaintiffs included the allegations made for the first time in their reply brief in their complaint or made similar arguments in their opening brief, the challenge to the registration requirement may have been preserved. But they did not do so.

16

Second, after failing to properly challenge the district court's reasoning in its opening brief, Plaintiffs failed to argue plain error in their reply brief. "[W]e will entertain forfeited theories on appeal, but we will reverse a district court's judgment on the basis of a forfeited theory only if failing to do so would entrench a plainly erroneous result." *Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). But the "appellant carries the heavy burden of satisfying plain error," and "if an appellant fails to satisfy that burden, we do not develop a plain error argument for the appellant." *United States v. MacKay*, 715 F.3d 807, 831 n.17 (10th Cir. 2013).

Third, Plaintiffs failed to allege in their complaint that the Secretary ordered Cowboys for Trump to pay $7,800 in fines for failing to comply with the CRA's registration requirements. It was not until their reply brief before this court that Plaintiffs provided evidence of the fine the Secretary imposed on Cowboys for Trump, even though the fine was imposed before Plaintiffs filed their complaint. Aplt. Rep. Br. at 8. Because our review here is confined to the complaint, we will not consider these fines in our disposition. *See Summum*, 130 F.3d at 913 n.9. And as noted before, Plaintiffs were given an opportunity to amend their complaint before filing this appeal, at which point they could have included these allegations. And as far as we can tell, Plaintiffs have no judicially created obstacles in attempting to cure the jurisdictional defects in their complaint through an amended complaint.

Consequently, we decline to reverse the district court's dismissal of Plaintiffs' claim against enforcement of the registration requirement.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court.

Entered for the Court

Timothy M. Tymkovich
Chief Judge